**CITY OF DES PLAINES, a Municipal Corporation of Illinois, Plaintiff-Appellant,**

v.

**The METROPOLITAN SANITARY DISTRICT OF CHICAGO, a Municipal Corporation of Illinois, et al., Defendants-Appellees.**

No. 76–1847.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 9, 1976.

Decided March 22, 1977.*

* This appeal was originally decided by unreported order on March 22, 1977. *See* Circuit Rule 35. The court has subsequently decided to issue the decision as an opinion.

Robert S. Minetz, Des Plaines, Ill., for plaintiff-appellant.

Samuel K. Skinner, U.S. Atty., Floyd Babbitt, Asst. U. S. Atty., Charles W. Boyd, Allen S. Lavin, Vincent P. Flood, James B. Murray, Robert B. Schaefer, Alvin Liebling, Chicago, Ill., Edward C. Hofert, Des Plaines, Ill., for defendants-appellees.

Before PELL and BAUER, Circuit Judges, and CAMPBELL, Senior District Judge.**

PELL, Circuit Judge.

The City of Des Plaines (the City) sued the Metropolitan Sanitary District of Greater Chicago (MSD), the United States Environmental Protection Agency (EPA), and Francis T. Mayo, in his capacity as EPA Regional Administrator for Region 5, alleging that two final Environmental Impact Statements (EIS's) issued by EPA in conjunction with MSD's proposed construction, with federal funding assistance, of the O'Hare Water Reclamation Plant and Solids Pipeline and the O'Hare Service Area Wastewater Conveyance System failed to comply with the requirements of the National Environmental Policy Act, 42 U.S.C. § 4321 et seq., and particularly with 42 U.S.C. § 4332(2)(C). The district court granted defendants' summary judgment motions and entered judgment against the City. The City appeals from this judgment, and also from limitations placed on its desired discovery of the federal defendants and the district court's refusal to strike the affirmative "unclean hands" defense of MSD and an intervening defendant, the Village of Elk Grove.

■ Our review of the adequacy of an EIS and of the merits of a decision reflected therein, while careful, has real limits. On the merits, "[t]he review should be limited to determining whether the agency's decision is arbitrary or capricious." *Sierra Club v. Froehlke,* 486 F.2d 946, 953 (7th Cir. 1973); and *see Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). Because so much of the City's argument seems to be little more than a rehashing of claimed conflicting positions on the merits, we are constrained to note that by no stretch of the imagination can EPA's decision to approve the projects in question be considered arbitrary or capricious.

■ Our review of the adequacy of the EIS to comply with the requirements of 42 U.S.C. § 4332(2)(C), however, is less summary in nature for that section's requirement that decisionmakers give full and fair consideration to the environmental consequences of proposed actions is close to the heart of NEPA. Accordingly,

[t]he detailed statement of the environmental consequences required by § 102 [of NEPA] [42 U.S.C. § 4332] "must be sufficiently detailed to allow a responsible executive to arrive at a reasonably accurate decision regarding the environmental benefits and detriments to be expected from program implementation." *Environmental Defense Fund v. Hardin,* 325 F.Supp. 1401, 1403–1404 (D.D.C.1971).

** Senior District Judge William J. Campbell of the Northern District of Illinois is sitting by designation.

Stated slightly differently, the statement must provide "a record upon which a decisionmaker could arrive at an informed decision." *Environmental Defense Fund v. Corps of Eng.*, U.S. Army, 342 F.Supp. 1211, 1217 (E.D.Ark.1972), aff'd (8th Cir.), 470 F.2d 289. *Sierra Club v. Froehlke, supra*, 486 F.2d at 950. On the other hand, an EIS adequacy review is conceptually limited to such considerations. It does not open the back door to reargument of the merits of the decision proposed by the EIS:

Neither the statute nor its legislative history contemplates that a court should substitute its judgment for that of the agency as to the environmental consequences of its actions. [Citation omitted.] The only role for a court is to insure that the agency has taken a "hard look" at environmental consequences; it cannot "interject itself within the area of discretion of the executive as to the choice of the action to be taken." *Natural Resources Defense Council v. Morton*, 148 U.S.App.D.C. 5, 458 F.2d 827, 838 (1972).

*Kleppe v. Sierra Club*, 427 U.S. 390, 410 n.21, 96 S.Ct. 2718, 2730, 49 L.Ed.2d 576 (1976). We have reviewed the EIS's at issue here and we conclude that under these principles they adequately complied with 42 U.S.C. § 4332(2)(C).

■ In the City's less than concise statement of its objections to EIS adequacy, we perceive three basic arguments, each of which must be rejected. First, the City contends that EPA impermissibly delegated its responsibilities under § 4332(2)(C) to MSD. To be sure, a number of the appendices contained in volume II of the EIS were prepared by MSD, but we find no impropriety therein so long as EPA independently performed the "impartial assessment of environmental consequences which lies at the heart of the National Environmental Policy Act." *Swain v. Brinegar*, 517 F.2d 766, 779 (7th Cir. 1975), *modified*, 542 F.2d 364 (7th Cir. 1976) (en banc). We believe there can be no substantial question of the fact that EPA performed this function here. MSD did not prepare the pertinent

analytical portions of the EIS, EPA did. Moreover, EPA solicited the views of several knowledgeable experts as well as those interested parties on its mailing list on the potential health hazards asserted by the City, and it plainly considered the responses obtained in its analysis.

■ The City argues, secondly, that the EIS's were misleading because they did not disclose the initial recommendation of an EPA team that a different site for the Water Reclamation Plant, not bordering on the City, be used. We do not think the failure to disclose this recommendation materially affects the adequacy of these EIS's, although it would have been a better procedure at least to make reference to it in the EIS's. *See Committee for Nuclear Responsibility, Inc. v. Seaborg*, 149 U.S.App.D.C. 380, 463 F.2d 783, 787 (Cir. 1971) (per curiam), *application for injunction in aid of jurisdiction denied*, 404 U.S. 917, 92 S.Ct. 242, 30 L.Ed.2d 191. The important point is that the EIS's contained meaningful data and analysis to identify the problem at hand for the responsible reviewing official, *see id.* at 787, without omitting reference to responsible opinion reaching different conclusions than did the EIS's. The substantial input of the City and others opposing the site selection ultimately made were set out in full and analyzed intelligently. We cannot say that in these circumstances more was required.

■ The City's third and most substantial argument is that bacterial and viral aeration will occur from the uncovered aeration tanks to be used in the project and that this may create a health hazard for City residents living nearby. We re-emphasize that our review of EIS adequacy does not encompass the merits of the position taken therein by EPA. As to the procedure followed, we believe it is clear from the material of record that EPA took the requisite hard look at this problem and reacted sensitively to it. EPA summarized in its analysis the data available (which was set out in full in appendices) and stated its reasonable conclusion that no definitive answer could be made to the question of as-

serted health hazards from aeration. In response to the mere possibility that such hazards might be present in unregulated aeration, EPA took a conservative approach and required MSD to design, construct, and install devices to suppress aerosol emissions. The uncertainty regarding the very existence and scope of the potential health hazard is ignored by the City in its argument that the failure to specify standards and specific devices renders the pertinent EIS inadequate and in its insistence that the entire project be held in abeyance until definitive answers and solutions can be obtained. We believe the EIS unquestionably contains a fair statement of the problem and the solutions intended, insofar as was possible, and we do not believe more was required in this case:

> [A]n EIS is required to furnish only such information as appears to be reasonably necessary under the circumstances for evaluation of the project rather than to be so all-encompassing in scope that the task of preparing it would become either fruitless or well nigh impossible . .. A government agency cannot be expected to wait until a perfect solution of environmental consequences of proposed action is devised before preparing and circulating an EIS.

*Natural Resources Defense Council, Inc. v. Callaway,* 524 F.2d 79, 88 (2d Cir. 1975) [citation omitted].

■ The fact that some monitoring on a continuous basis will be required by EPA's proposed solution does not vitiate the adequacy of the EIS, for such monitoring can be expected to have meaningful consequences. *Compare Natural Resources, supra,* where monitoring was said to be inadequate because it could only uncover the potential problem once it had reached irreversible and serious levels. Nor does *Chelsea Neighborhood Associations v. United States Postal Service,* 516 F.2d 378 (2d Cir. 1975), principally relied upon by the City, suggest a different result. There, a Postal Service vehicle maintenance center was proposed with a substantial low income housing project to be built on top of it, and the

pertinent EIS made no assessment of the impact of the housing project. The Postal Service argued that the uncertainty as to whether the project would be built obviated the need to consider its impact, and the court properly rejected this argument. Recognizing that decisionmakers "can only do the possible," *id.* at 388, the court pointed out that an evaluation of impact in the event the project was built was entirely possible. Here, by contrast, the present state of scientific knowledge does not permit a fuller assessment than was undertaken.

■ Turning to the City's objections to denials of its discovery requests, we note that the City was given access to EPA's pertinent files and that it did not preserve its right to object to the magistrate's order of December 10, 1975, which struck interrogatories, by complying with Local Magistrate Rule 2.03. The only matter before us, then, is the magistrate's order of January 9, 1976, quashing depositions of numerous EPA staff members. (Depositions of other staff members were allowed.) We find no error. In *Citizens to Preserve Overton Park v. Volpe, supra,* the Supreme Court discussed the discovery procedures to be applied on remand of that case:

> The court may require the administrative officials who participated in the decision to give testimony explaining their action. Of course, such inquiry into the mental processes of administrative decisionmakers is usually to be avoided. *United States v. Morgan,* 313 U.S. 409, 422, [61 S.Ct. 999, 85 L.Ed. 1429] (1941). And where there are administrative findings that were made at the same time as the decision, as was the case in *Morgan,* there must be a strong showing of bad faith or improper behavior before such inquiry may be made. But here there are no such formal findings and it may be that the only way there can be effective judicial review is by examining the decisionmakers themselves.

401 U.S. at 420, 91 S.Ct. at 826; and *see Village of Arlington Heights v. Metropolitan Housing Development Corporation,* ——

U.S. ——, 97 S.Ct. 555, 50 L.Ed.2d 450 n. 18 (1977). In this case, data, analysis, and findings are all set out in the three-volume EIS's under consideration. *Compare Scherr v. Volpe,* 466 F.2d 1027, 1032 (7th Cir. 1972). Nor has the City made the requisite "strong showing of bad faith or improper behavior," *Citizens to Preserve Overton Park, supra,* on the part of EPA which arguably might, in different circumstances, justify the type of mental process probing in which the City would like to engage.

Because the "unclean hands" defense asserted by MSD and the Village of Elk Grove is immaterial to our disposition of this case, it is unnecessary for us to consider the propriety of the district court's refusal to strike the defense. Accordingly, MSD's post-argument motion to file "as Additional Authorities" a brief filed by the City in the Illinois Appellate Court, which brief is represented to be relevant to the "unclean hands" defense, is denied. The judgment entered by the district court against the City is affirmed.

AFFIRMED.