Mark ANSON, Douglas Anson, Fred Chaney, Rosemary Chaney, Allan Coulson, Lee Coulson, Lee Coulson, As Administrator of the Estate of Victor Coulson, Beverly Coulson, Donald Dreiman, Marlin Dreiman, Carol Dreiman, Forest Bruce Deschamp, Charlotte J. Deschamp, Charles Dutton, Susan Dutton, William Ferree, Lovine Ferree, Michael Hagemeier, Linda Hagemeier, Loren Lambeth, Doris Lambeth, William Squires, Kay Squires, Ruby Unger, Howard Unger, Wayne Unger, and The Coalition of American Electric Consumers, Plaintiffs,

v.

C.E. EASTBURN, Louisville District Engineer, U.S. Army Corps of Engineers, Willis White, Jr., William Black, American Electric Power Company, Inc., American Electric Power Service Corporation, American Electric Power Generating Company, Indiana & Michigan Electric Company, Indiana Franklin Realty Company, Kentucky Power Company, and Michigan Power Company, Defendants.

No. TH 82–114, C.

United States District Court,
S.D. Indiana,
Evansville Division.

Nov. 22, 1983.

Max E. Goodwin, Terre Haute, Ind., for plaintiffs.

Edward Berlin, Robert S. Taylor, Washington, D.C., Henry J. Price, Indianapolis, Ind., Simpson, Thacher & Bartlett, New York City, Sara E. Barker, U.S. Atty., Indianapolis, Ind., Jennifer Payton, Louisville Dist. Corps of Engineers, U.S. Army Corps of Engineers, Louisville, Ky., Theo. Lockyear, Evansville, Ind., for defendants.

BROOKS, District Judge.

This matter comes before the Court upon the motions of the American Electric Power corporate defendants (hereinafter the AEP corporate defendants); Willis White, Jr. and William Black as individual defendants (hereinafter White and Black); and C.E. Eastburn as District Engineer for the United States Army Corps of Engineers (hereinafter Corps) for Summary Judgment as to Count I of plaintiffs' complaint pursuant to Rule 56, Federal Rules of Civil Procedure.

All of the defendants have filed extensive briefs in support of their motions as well as replies to the plaintiffs' briefs in opposition. Plaintiffs collectively filed responses to defendants' motions for summary judgment and pursuant to this Court's order of May 13, 1983 filed affidavits in support of their position.

Count I of plaintiffs' complaint is an action brought under the National Environmental Policy Act (hereinafter NEPA), 42 U.S.C. §§ 4321 et seq., and alleges in the most general terms the following:

(1) that the AEP corporate defendants are constructing a coal-fired generating plant and associated transmission lines in the Southern Indiana area;

(2) that certain permits are required for the project, some of which were issued by the Corps of Engineers;

(3) that the Corps of Engineers is required to comply with NEPA in performing their duties with regard to the issuance of permits;

(4) that as part of the requirements of NEPA an Environmental Impact Statement (hereinafter EIS) must be prepared;

(5) that the EIS as prepared by the Corps was inadequate and improper;

(6) that because of the inadequacies of the EIS the provisions of NEPA were violated;

(7) that the defendant C.E. Eastburn (hereinafter Eastburn) as District Engineer knew that the EIS was inadequate but proceeded to issue the required permits anyhow; and

(8) that such actions were arbitrary, capricious, and an abuse of discretion.

An examination of the complaint shows that plaintiffs do not specifically point to any shortcomings in the EIS which would render it inadequate or improper. Nor does plaintiffs' response to the motions for summary judgment shed any light on exactly what provisions of the EIS are deemed insufficient. However, at the hearing held on defendants' motions for summary judgment plaintiffs' counsel appeared to indicate that the primary complaint is that the Corps failed to either discover from the material provided to them that there was no need for the plant, or to undertake a separate investigation as to the need for electrical power. In this regard, and pursuant to the Court's order, plaintiffs' counsel submitted affidavits from the following people: (1) Rees Shearer, Executive Director of the Coalition of American Electric Consumers, a named plaintiff in this cause; (2) Kanu R. Shak, an electrical engineer; (3) Frank Hauck, a civil engineer; (4) Beverly Coulson, another named plaintiff. Perusal of the four affidavits indeed shows that the main complaint is directed at the Corps evaluation or non-evaluation of the need for the project. Hauck's affidavit states that "... [M]y study was directed toward what the statement says and what it omits about the need for electric power ..." and as Shearer stated in his affidavit, "[T]he primary research insufficiency in the ... Environmental Impact Statement ... is the complete failure of the Corps to undertake an independent assessment of the need for the project ..." The Coulson and Shak affidavits also point to alleged insufficiencies in the Corps determination of need for the project, although both also address other matters such as the inadequacies of the EIS's treatment of the impact of the transmission lines themselves, the socio-economic impact on coal miners, and the plants possible contribution to acid rain.

The National Environmental Policy Act sets forth a declaration of national environmental policy and requires the Federal Government to use "all practicable means,

consistent with other essential considerations of national policy, to improve and coordinate Federal plans, functions, programs, and resources to achieve a wide range of environmental goals. *See,* 42 U.S.C. § 4331. To advance this policy Section 4332(2)(C) of Title 42 U.S.C. requires in pertinent part that all agencies of the Federal Government:

Include in every recommendation or record on proposals for legislation and other major Federal Actions significantly affecting the quality of the human environment, a detailed statement by the responsible official on

(i) The environmental impact of the proposed action

(ii) Any adverse environmental effects which cannot be avoided should the proposal be implemented.

(iii) Alternatives to the proposed action.

The purposes intended to be served by this detailed statement, the EIS, basically are two. First, it should provide decision-makers with an environmental disclosure sufficiently detailed to aid in the substantive decision. Secondly, the statement should provide the public with information on the environmental impact of a proposed project as well as encourage public participation in the development of that information. *See, Trout Unlimited v. Morton,* 509 F.2d 1276 (9th Cir.1974). However, it is clear that environmental concerns are not to be elevated over other appropriate considerations. *Strycker's Bay Neighborhood Council v. Karlen,* 444 U.S. 223, 100 S.Ct. 497, 62 L.Ed.2d 433 (1980). Nor, is an agency required to review all possible impacts or all possible alternatives to the proposed action. *Swain v. Brinegar,* 542 F.2d 364 (7th Cir.1976); *North Slope Borough v. Andrus,* 642 F.2d 589, 590 (D.C.Cir.1980). It is sufficient if the agency takes a "hard look" at the environmental consequences, and there is no requirement that every conceivable study be performed and that each problem be documented from every angle. *Sierra Club v. Froehlke,* 486 F.2d 946 (7th Cir.

1973). The mandate to agencies under NEPA is essentially procedural. *Vermont Yankee Nuclear Power Corp. v. NRDC,* 435 U.S. 519, 98 S.Ct. 1197, 55 L.Ed.2d 460 (1978).

The role of the Court in evaluating a challenge to the sufficiency of an EIS is circumscribed. *City of Des Plaines v. Metropolitan Sanitary District,* 552 F.2d 736 (7th Cir.1977). Essentially, the basic issues to be resolved is whether, in the preparation of the EIS, the procedural requirements of NEPA were followed and whether the EIS as prepared permitted informed decision making by the agency. *Strycker's Bay, supra.* If the Court determines that the EIS considered all of the relevant factors in such a manner that it furnished such information as appeared to be reasonably necessary for evaluation of the project then the Court's duty of review is ended. *See Manygoats v. Kleppe,* 558 F.2d 556 (10th Cir.1977), and the Court may not substitute its judgment for that of the agency. *Strycker's Bay, supra, Vermont Yankee, supra.*

As noted earlier, plaintiff's major contention is that the Corps failed to adequately investigate and/or evaluate the need for this project. Emphasis is placed upon what is contended to be erroneous figures which the Corps used for future demand and present generating capacity. In this vein plaintiffs seem to argue that the Corps improperly relied upon projections of demand furnished them by the AEP corporate defendants and that the Corps is required to conduct an independent investigation into need. With this proposition the Court cannot agree.

It should be noted at the outset that no provision of NEPA (42 U.S.C. § 4321 *et seq.*) mandates an independent evaluation by the agency involved of the need for a project. In fact, the only place where need is mentioned is in the provisions of the Code of Federal Regulations which deal with environmental impact statements. (40 CFR § 1502 *et seq.*). 40 CFR § 1502.13 provides that the environmental impact statement:

... shall briefly specify the underlying purpose and need to which the agency is responding in proposing the alternatives including the proposed action.

Such provisions cannot be interpreted as requiring that the agency make a *de novo* determination of need, but only that the agency include such statement of purpose and need so as to put into context what the EIS is addressing. Such an interpretation is reinforced by the comments published by the Council on Environmental Quality when the regulations were adopted. The comments state in pertinent part:

Comments on § 1502.13: Purpose and need. This section of the draft regulations provided that agencies shall briefly specify—normally in one page or less— the underlying purpose and need to which the agency is responding in proposing alternatives for action. Many commenters stated that in some cases this analysis would require more than one page. The Council responded to these comments by deleting the one page limitation.

43 Fed.Reg. 55, 983 (Nov. 29, 1978).

An examination of the EIS prepared for the project involved in this case discloses that the Corps devoted approximately six (6) pages to a discussion of the purpose and need for action. *See,* Rec.Vol. VIII at 1–6. Certainly this discussion of the purpose and need for action more than adequately complies with the requirement of 40 C.F.R. § 1502.13 and the purpose to be served by including such a section in the EIS.

■■■ Plaintiff however contends that because of the Corps' reliance upon information supplied by the defendants, the discussion of need is inaccurate, misleading, and totally unsupported. Plaintiffs have cited the Court to no authority which would prohibit an agency from using information provided to it by an applicant for a permit. As the Court in *Lake Erie Alliance v. U.S. Army Corps of Engineers,* 526 F.Supp. 1063 (W.D.Pa.1981) stated:

Nothing in NEPA or the regulations says that the agency cannot adopt a report furnished by the applicant in whole or

part. The Act only requires that the defendants take responsibility for the scope and content and make their own evaluation of the *environmental issues* ... (Emphasis added)

Assuming that a statement in the EIS of purpose and need for action would be considered an "environmental issue", then all that could be required of the Corps is that they evaluate whatever information is provided to them. Plaintiffs do not seriously contest that the Corps made its own evaluation of the information provided, and in view of the references in the record bearing upon the information provided, the Court is of the opinion that such an argument could not be made in good faith. See, *e.g.* Rec.Vol. I, 24–25, 52–53; Rec.Vol. VI 123, 284. By affidavit plaintiffs have provided information which purports to show that reliance upon the information provided by the AEP corporate defendants as to need for the project was unjustified. Even if the information supplied by plaintiffs as to growth and demand is correct it does not lead to the inescapable conclusion that the EIS is deficient. First, under NEPA an agency has a right to be "arguably wrong". *North Slope Borough, supra.* Secondly, a determination by the Court that one of the party's projections as to growth and demand for electric power was correct, or incorrect, would involve little more than a rehashing of the merits of the conflicting positions and thus would take the Court outside of its limited scope of review. *See, Sierra Club v. Froehlke, supra.*

Procedurally, the Corps was required to include in the EIS a statement of need and purpose. That this was done can not be contested. However, there is no requirement that such statement be based upon an independent investigation by the agency. Here the Corps relied to some extent upon information submitted by the AEP corporate defendants, and from an examination of the record it appears· that the Corps undertook an evaluation of such information prior to issuing the EIS. This is all that they were required to do with respect

to the statement of purpose and need. Undoubtedly, the decisions reached therein do not conform with that which would have been reached by plaintiffs, however, that is not the standard by which the conclusions reached are to be measured. *Lake Erie Alliance, supra.* The decision must have been arbitrary, capricious or in excess of the agency's authority. The Court finds that under the facts of this case that it was not.

Plaintiffs' second major complaint with the EIS is that it fails to adequately address the environmental impact of the power transmission line corridors and the use of Seven Hundred Sixty Five (765) KV transmission lines. Plaintiffs support this position by arguing that the granting of the three river crossing permits constituted major Federal action thus requiring an EIS of their own prior to the issuance of the permits.

Initially, it should be noted that the Corps of Engineers jurisdiction is limited. Section 10 of the Rivers and Harbors Act of 1899, 30 Stat. 1151, 33 U.S.C. § 403 provides that the Corps' jurisdiction extends only to areas in and affecting navigable waters. *See, United States v. Sexton Cove Estates, Inc.,* 526 F.2d 1293 (5th Cir. 1976). As the Third Circuit observed in *United States v. Stoeco Homes, Inc.,* 498 F.2d 597 (3rd Cir.1974):

> The federal environmental protection statutes did not ... by their terms enlarge the jurisdiction of the Army Corps of Engineers under the Rivers and Harbors Appropriation Act of 1899. If there is no such jurisdiction environmental protection is still a matter primarily of state concern.

Hence, under the language of Section 10 the Corps' jurisdiction does not extend to the placement or size of the transmission lines or corridors, other than where such lines crossed navigable waters. And it is clear that NEPA could not enlarge the Corps' jurisdiction. *Stoeco Homes, supra.* Thus, if the Corps had refused to address the placement or size of lines other than their effect on the river crossings their decision to do so could not be assailed. Furthermore, the Corps' determination that a separate EIS was not required for the river crossings is not without authority. In *Winnebago Tribe of Nebraska v. Ray,* 621 F.2d 269 (8th Cir.1980), the Eighth Circuit upheld the Corps' decision not to prepare an EIS prior to the issuance of a Section 10 permit reasoning that the Corps was under no duty to consider the impact posed by the entire transmission line. In the case at bar the size and location of the lines and corridors are discussed in various places throughout the EIS. *E.g.,* EIS p. 22–26 Transmission Facilities and Alternatives; p. 59–67 Affected Environment Transmission Corridor Setting; p. 98–105 Environmental Consequences-Transmission Corridors and Lines. In addition, comments were received about the proposed lines and were responded to. Such responses noted that the Corps' jurisdiction was limited to the river crossings. *See e.g.* Rec.Vol. VIII p. 226. At the time the river crossing permits were issued, reference was made to the discussion concerning the lines and routes in the EIS, noting that the EIS discussed alternative routes, the effects of the lines themselves, and general environmental concerns. See, Rec.Vol. IV, p. 110; Rec.Vol. II, p. III; Rec.Vol. III, p. 110.

Under the statutory and regulatory provisions the Corps in this case was not required to deal with the transmission corridors or the size of the lines in the EIS. That they did address the issue however cannot be contested. Plaintiffs would have the Court find that the EIS is inadequate because the Corps' discussion does not comport with what plaintiffs would consider an adequate treatment of the issues surrounding either the size or placement of the lines. To so hold would result in the anomalous situation of finding that an agency has violated the provisions of NEPA by addressing a topic which they were not required by law to address. Nor, in light of *Winnebago, supra,* can the Corps' decision that issuance of the river crossing permits was not major federal action be disturbed. Thus, the Corps' treat-

ment of the transmission lines, when measured against the purpose to be served (*i.e.*, evaluation of the river crossing permits) was sufficient for its intended purpose.

■ Plaintiffs' additional arguments in support of their position that the EIS is inadequate are much harder to pinpoint. The affidavits submitted in support of plaintiffs' position allude to certain inadequacies in the EIS's treatment of the socioeconomic impact on coal mining in the Midwest, and the potential problems associated with sulpher dioxide emissions. However, examination of the affidavits show either that many of the statements contained therein are merely conclusory, or are based upon studies which were not submitted to the Corps prior to issuance of the EIS. The Coulson affidavit makes reference to what "I believe the evidence will ultimately show", or other facts which the affiant "believes" to be true. Such unsupported statements as to what an affiant believes simply are not sufficient to raise a material issue of fact. *See DiIulio v. Board of Fire and Police Commissioners*, 682 F.2d 666 (7th Cir.1982). With regard to the studies which are relied upon in the affidavits, it is clear that the Court, in reviewing the actions of an agency, must rely upon the administrative record in existence. The Seventh Circuit stated in *Commodity Futures Trading Comm'n v. Hunt*, 591 F.2d 1211 (7th Cir.1979):

> The law is well settled that the administrative record already in existence—not some new record made initially in the reviewing court—should be the focus of judicial review.

Here, the studies cited by plaintiffs in their affidavits were either submitted to the Corps after the issuance of the EIS (*e.g.* the Energy System Reserve Group study) or were *never* submitted to the Corps at all. In addition, in many instances the information provided in the studies simply represents a difference of opinion on one of the many issues addressed in the EIS.

The law is clear that the Court is limited in its review of the EIS to making a determination of whether the agency disregard-ed procedural requirements in the preparation of the EIS and whether the EIS would permit informed decision making. *Stryck-er's Bay*, supra. The EIS at issue in this case is comprised of approximately Two Hundred Forty Five (245) pages of text and comments covering, among other things, the purpose and need for action, alternatives to the action, description of the affected environment, and environmental consequences. The EIS was only issued after evaluations were made, a draft EIS submitted, the comment period was closed, and public hearings had been conducted. From the record, the Court has been unable to find any procedural requirement of NEPA that the Corps failed to follow. Indeed, plaintiffs' real complaint is not that the procedural requirements of NEPA were not followed, but it is with the content of the EIS.

■ It is difficult to imagine a situation, such as the case herein where construction of a major project is the central issue, where there would not be disagreements as to the need for the project or as to the scope and content of the investigation which preceeded the granting of permits for the project. But, whether or not the parties disagree, or even whether there is authority which conflicts with the agency's decision is not the yardstick by which the sufficiency of an EIS is to be measured. *Lake Erie Alliance, supra.* Rather, it is whether the EIS as prepared permitted informed decision making by the agency. As the Court in *National Resources Defense Council v. Callaway*, 524 F.2d 79 (2nd Cir.1975) states:

> [A]n EIS is required to furnish only such information as appears reasonably necessary under the circumstances for the evaluation of the project rather than to be so all-encompassing in scope that the task of preparing it would become either fruitless or well nigh impossible

When measured by this standard, the record and the EIS would appear to have provided all of the information necessary for the Corps to make a reasonably informed decision. Certainly, it is not the

decision that plaintiffs would have reached, but plaintiffs have failed to point with any specificity to any acts of the Corps that were arbitrary, capricious, outside the scope of their authority or done in bad faith.

Therefore, the AEP corporate defendants Motion for Summary Judgment as to Count I of the complaint is GRANTED. Likewise, the defendants Willis White, Jr., William Black, and C.E. Eastburn as District Engineer, U.S. Army Corp of Engineers Motions for Summary Judgment as to Count I of the Complaint are also GRANTED.

IT IS SO ORDERED.