**PUBLIC SERVICE COMMISSION OF MARYLAND et al.**

v.

**PATUXENT VALLEY CONSERVATION LEAGUE et al.**

No. 148, Sept. Term, 1982.

Court of Appeals of Maryland.

July 12, 1984.

202

James A. Pine, Gen. Counsel, Baltimore (O. Ray Bourland, III, Staff Atty., and Sandra L. Hall, Asst. General Counsel, Baltimore, on the brief), for appellant, Public Service Commission.

Michael J. Scibinico, II, Asst. Atty. Gen., Annapolis (Stephen H. Sachs, Atty. Gen., Baltimore, and Thomas A. Deming, Asst. Atty. Gen., Annapolis, on the brief), for appellant, State of Maryland, Dept. of Natural Resources.

James L. Mayer, Columbia (Richard B. Talkin and Talkin & Abramson, Columbia, on the brief), for appellees.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

ELDRIDGE, Judge.

In this case we are asked to decide whether the individual commissioners of the Public Service Commission, a state agency, may be required to appear for pretrial depositions with respect to a Commission decision granting the Potomac Electric Power Company (PEPCO) a Certificate of Public Convenience and Necessity for the construction of a transmission line in Montgomery and Howard Counties. We are also presented with the threshold question of whether the trial court's discovery order, in an action for judicial review of the administrative decision reached by the Commission, may be immediately appealed by the Commission and the State of Maryland. We hold that the trial court's order is

immediately appealable by the Commission and the State, and that the order constituted an abuse of the trial judge's discretion.

## I.

Pursuant to Maryland Code (1957, 1980 Repl.Vol., 1983 Cum.Supp.), Art. 78, § 54A, a public utility must acquire a Certificate of Public Convenience and Necessity from the Commission before commencing construction of any overhead transmission line carrying in excess of 69,000 volts. In this case, PEPCO sought such a certificate from the Commission for the purpose of constructing a 500 kilovolt overhead transmission line between substations in Howard and Montgomery Counties. After taking testimony for approximately one year from more than one hundred lay witnesses and many expert witnesses, the hearing examiner recommended that PEPCO be issued the requested certificate. The Commission, upon extensive review of the testimony, which was detailed in a record of 6,000 pages, agreed. Howard County, and numerous property owners who would be affected by the transmission line (Patuxent Valley Conservation League, et al.), then filed in the Circuit Court for Howard County an action for judicial review of the Commission's decision.[1]

About a month prior to the circuit court hearing, the Patuxent Valley Conservation League (Patuxent) filed a notice and a request for a summons for the purpose of taking the oral depositions of the commissioners who participated in the Commission's PEPCO decision. The Commission then filed a motion for a protective order, and a hearing on the motion was held. At the hearing, counsel for Patuxent orally alleged that the Commission had used "improper procedure" and that the administrative record was deficient. The only factual allegations made by coun-

---

1. The Commission and PEPCO were the original defendants in the suit. The State of Maryland, Department of Natural Resources, intervened as an additional defendant.

sel for Patuxent, however, were that a report by the Commission's engineer was not in the administrative record and that, at some point during the administrative proceedings, an "informal" *ex parte* communication may have taken place between the hearing examiner and the Chairman of the Commission. In addition, counsel for Howard County alleged that the hearing examiner "might have been predisposed" and that the case "may even bear down to some question of bad faith." Counsel for the Commission, on the other hand, argued that "[t]he record speaks for itself," that Patuxent had raised "only ... spurious allegations," and that, therefore, the members of the Commission should not be deposed. The circuit court judge, concluding that Patuxent's assertions amounted to allegations of "bad faith" and "improper procedure," denied the Commission's motion and ordered the commissioners to appear for depositions.

The Commission immediately asked the circuit court to stay the discovery order so that the Commission could seek appellate review of the decision. The circuit court granted the stay, and both the Commission and the State filed orders of appeal to the Court of Special Appeals. While the case was pending before the Court of Special Appeals, this Court issued a writ of certiorari. In addition to briefing and arguing the merits, Patuxent has filed in this Court a motion to dismiss the appeals on the ground that the circuit court's order was interlocutory and not appealable.

## II.

■ The threshold question is whether the Commission and the State may appeal from the trial court's discovery order.[2]

---

**2.** This question relates to the finality of the order and not to the standing of the Commission and the State. Even though the discovery order was directed to the individual commissioners, who were not parties to the judicial review action, former Maryland Rule 406a., which is now Maryland Rule 2–403(a), gives a party to the action standing to seek a protective order in a situation such as this. It

■ As we have repeatedly stated, ordinarily an appeal will lie only from a final judgment, and finality is a matter ultimately to be determined by this Court. *Sigma Repro. Health Cen. v. State,* 297 Md. 660, 664–666, 467 A.2d 483 (1983); *Peat & Co. v. Los Angeles Rams,* 284 Md. 86, 90–91, 394 A.2d 801, 5 A.L.R.4th 1238 (1978); *Warren v. State,* 281 Md. 179, 182–183, 377 A.2d 1169 (1977). We have also in recent years adopted the so-called "collateral order doctrine," which treats as final and appealable a limited class of orders which do not terminate the litigation in the trial court. *See, e.g., Kawamura v. State,* 299 Md. 276, 282–283 n. 5, 473 A.2d 438 (1984); *Mann v. State's Atty. for Montgomery Cty.,* 298 Md. 160, 163–165, 468 A.2d 124 (1983); *Highfield Water Co. v. Wash. Co. San.,* 295 Md. 410, 417, 456 A.2d 371 (1983); *News American v. State,* 294 Md. 30, 45–46, 447 A.2d 1264 (1982); *Clark v. Elza,* 286 Md. 208, 212–213, 406 A.2d 922 (1979), and cases cited therein. This doctrine generally permits an appeal from an order which satisfies four requirements. The four requirements are as follows (*Clark v. Elza, supra,* 286 Md. at 213, 406 A.2d 922):

" '[T]he order must [ (1) ] conclusively determine the disputed question, [ (2) ] resolve an important issue [, (3) be] completely separate from the merits of the action, and [ (4) ] be effectively unreviewable on appeal from a final judgment.' "

■ In our view these four criteria were met, and the trial court's discovery order is appealable by the Commission or the State. First, the order conclusively determined that individual Commission officials must appear for depositions with respect to their decision to grant PEPCO a certificate. Second, the issue is clearly important. If, in actions for judicial review of administrative decisions, it is permissible for trial courts to order the depositions of the

---

follows, therefore, that a party to the action would have standing to appeal from a ruling denying the requested protective order and directing that the subject individuals appear for depositions.

administrative decision makers, upon the type of allegations made in this case, the impact upon administrative agencies of the State and local governments may be quite substantial. Third, the question whether Commission decision makers should be required to stand for depositions is distinct from the merits of Patuxent's action for judicial review of the agency decision. Finally, if not appealable until the conclusion of the trial, the claim that Commission members should not be routinely subjected to extensive probing of their individual decisional thought processes would irretrievably be lost. Regardless of the outcome of the trial, the disruption to the administrative process, caused by placing the officials under pretrial scrutiny, is incurred at the first instance. Therefore, it would be impossible to cure the harm done to the Commission once the depositions have been taken.

Although in this case we take the position that the order requiring Commission members to stand for pretrial depositions is appealable by the Commission or the State, we continue to adhere to the general rule that discovery orders are interlocutory and ordinarily cannot be appealed prior to a final judgment terminating the case. *See, e.g., Sigma Repro. Health Cen. v. State, supra,* 297 Md. at 675, 467 A.2d 483 ("ordinarily an order denying a motion to quash a subpoena duces tecum in a pending case is not an appealable final order"); *Price v. Orrison,* 261 Md. 8, 9, 273 A.2d 183 (1971) (order authorizing plaintiff to take depositions of members of civic association to aid in execution of judgment obtained against association); *Kardy v. Shook,* 237 Md. 524, 534, 207 A.2d 83 (1965) (order allowing defendant in criminal case to take pretrial depositions of State's witnesses); *Alford v. Commissioner,* 227 Md. 45, 47, 175 A.2d 23 (1961) (orders denying discovery against Commissioner of Motor Vehicles and employee of insurance company in connection with suit arising out of "hit and run" automobile accident). Rather, we conclude only that the particular facts of this case warrant a departure from the general rule.

One reason underlying the general rule against the immediate appeal of discovery orders is that "[o]rdinarily, an order granting or denying discovery does not finally determine the rights of any party . . . ." *Alford v. Commissioner, supra,* 227 Md. at 47, 175 A.2d 23. Also, in the usual case, the party or individual opposing the discovery order does not suffer sufficient immediate harm to warrant an appeal prior to the final termination of the litigation. Moreover, a party is generally able to seek effective review of the order upon an appeal from an adverse final judgment terminating the case. By contrast, in the case at bar, the harm that will result from deposing Commission members prior to trial, should they be immune from this type of scrutiny, will occur from the instant they are subjected to a probing of their decision making processes. Furthermore, the harm to the State and its agencies, and consequently to the public, because of the disruption of the governmental process which could result from orders such as this, is potentially much greater than the harm to private individuals and entities.

While *Montgomery Co. Coun. v. Kaslow,* 235 Md. 45, 200 A.2d 184 (1964), would appear to be contrary to our holding today, that case is distinguishable because it was decided before this Court had adopted the collateral order doctrine. Also, in *Kaslow* the request to depose the local administrative officials was supported by detailed factual allegations.

■ The facts of the case at bar place it within the line of cases in this Court which have allowed an immediate appeal based on the collateral order doctrine. For example, in *Clark v. Elza, supra,* 286 Md. 208, 406 A.2d 922, we held that the trial court's denial of a motion to enforce an executory oral settlement agreement between the parties was immediately appealable under the collateral order doctrine. We noted that one of the primary considerations in entering a pretrial settlement agreement was to avoid the expense and inconvenience of a trial, and, therefore, this contractual benefit derived from entering into the agree-

ment would be lost if the party seeking to enforce the agreement was first required to proceed through an entire trial on the merits. 286 Md. at 213, 406 A.2d 922. Similarly, in the context of administrative decisionmaking, judicial review of Commission decisions is generally based on the record, and the thought processes of individual agency officials are free from scrutiny. *See Public Serv. Comm'n v. Balto. Gas & El.,* 273 Md. 357, 362–363, 329 A.2d 691 (1974). It would defeat this principle if agency officials were routinely forced to undergo time-consuming depositions, then proceed to trial, and ultimately, upon a final judgment in the case, attempt to litigate the issue of whether they should have been deposed in the first place.

The situation presented in the case at bar is analogous to that of a government official claiming immunity as a defense to a civil action. Where a defense of official immunity has been denied, courts have applied the collateral order doctrine to review the denial prior to the final judgment terminating the case. *See Nixon v. Fitzgerald,* 457 U.S. 731, 742–743, 102 S.Ct. 2690, 2698–2699, 73 L.Ed.2d 349 (1982); *Forsyth v. Kleindienst,* 700 F.2d 104, 105 (3d Cir. 1983); *McSurely v. McClellan,* 697 F.2d 309, 315–316 (D.C. Cir.1982). The rationale of these cases is to protect the government official from the burden of an unnecessary trial. As the court said in *McSurely v. McClellan, supra,* 697 F.2d at 316:

"[P]art of the purpose of immunity, whether absolute or qualified, is to shield government officials from 'the risks of trial—distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service.' "

The particular issue in this case has been dealt with by the courts in at least one other state, and they have permitted immediate review of orders which direct the taking of pretrial depositions from administrative decision makers. *State of California v. Superior Court,* 16 Cal.App.3d 87, 91–92, 93 Cal.Rptr. 663 (1971). *See Board of Dental Examiners v. Superior Court,* 55 Cal.App.3d 811, 127 Cal.Rptr.

865 (1976); *Board of Administration v. Superior Court*, 50 Cal.App.3d 314, 123 Cal.Rptr. 530 (1975). Although the California appellate courts review such orders by writs of prohibition rather than invoking the collateral order doctrine, the courts nevertheless have consistently taken the position that orders authorizing "post-administrative hearing discovery" from agency officials should be reviewed before trial on the merits. The court in *State of California v. Superior Ct., supra*, 16 Cal.App.3d at 91, 93 Cal.Rptr. 663, summarized as follows:

> "[I]f [the order granting discovery] could only be reviewed on appeal from the final judgment entered in the main actions herein or from a judgment for contempt for failing to answer the questions propounded, the determination of the question as to whether post-administrative hearing discovery will lie herein would be unduly delayed and manifestly inadequate."

■ For the foregoing reasons, we hold that an order in an action for judicial review of an administrative decision, requiring administrative decision makers to stand for depositions, may be immediately appealed by the agency itself or, if a party, by the government of which the agency is a part.[3] We reiterate, however, that our holding is a narrow one. Thus discovery orders, directed at other than high level government decision makers, are ordinarily not appealable in accordance with the general rule. *Sigma Repro. Health Cen. v. State, supra.* Orders refusing discovery are normally not immediately appealable, whether involving government officials or not. In sum, our holding concerning appealability goes no further than the circumstances presented in this case.

### III.

■ We now consider whether the trial court's discovery order should be reversed. As previously noted, in seeking

---

**3.** Whether the individual agency officials may take immediate appeals from such orders is not before us in this case.

to depose the commissioners, Patuxent and Howard County alleged that the Commission had acted improperly and perhaps in "bad faith" in granting the certificate to PEPCO. The trial court, in ordering the depositions, was influenced by the broad scope of discovery set forth in Maryland Rule 400,[4] and by Code (1957, 1980 Repl.Vol.), Art. 78, § 96, which allows the submission of new evidence upon judicial review of Commission actions.[5] The trial judge apparently

---

**4.** Maryland Rule 400, at the time of the trial court proceedings, provided in relevant part:

"Rule 400. Application and Scope ... Gen'l.

a. *Application to All Actions—Limitation by Court of Time for Discovery.*

This chapter shall apply to all actions. Notwithstanding any other provisions of this Chapter, the court may at any time order that discovery in an action be completed by a specified date or time, which shall be a reasonable time after the case is at issue. The court may, for good cause shown, enlarge or shorten the time specified in its order.

\* \* \* \* \* \*

c. *Scope of Discovery—In General.*

Unless otherwise ordered by the court parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action,

(i) whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, and

(ii) including the existence, description, nature, custody, condition and location of any books, documents or other tangible things, and

(iii) including any information of the witness or party, however obtained, as to the identity and location of persons having knowledge of any discoverable matter, and

(iv) whether or not any of such matters is already known to or otherwise obtainable by the party seeking discovery, and

(v) whether or not the information will be inadmissible at the trial, if the information sought appears reasonably calculated to lead to the discovery of admissible evidence."

Effective July 1, 1984, Maryland Rule 400 was superseded by new Maryland Rule 2–402.

**5.** Art. 78, § 96, provides in part, as follows:

"§ 96. Evidence.

(a) *Introduction of new evidence.*—Any party may introduce new evidence on judicial review. If such evidence is materially different from the evidence at the hearing before the Commission, the court, unless all parties stipulate in writing to the contrary, shall refer a transcript thereof to the Commission, and stay the proceedings for

was of the view that Patuxent was entitled to determine whether its suspicions of "bad faith" and "improper procedure" were well-founded by deposing the Commission officials. The Commission and the State opposed the order for depositions because, in their opinion, it was error to require administrative officials to appear for depositions upon a bald allegation of "bad faith" and "improper procedure." We agree with the position taken by the Commission and the State and, therefore, conclude that the trial judge abused his discretion by ordering named commissioners to appear for depositions.

This Court has never expressly ruled whether a party challenging an administrative decision in court can depose the individual decision makers upon a mere allegation of "bad faith" or "improper procedure." The issue, however, was discussed in dicta in *Montgomery Co. Coun. v. Kaslow, supra,* 235 Md. 45, 200 A.2d 184. In *Kaslow,* the County Council of Montgomery County, acting as a special statutory "District Council," denied several zoning applications. The applicants brought an action for judicial review and filed notice of their intention to take the depositions of individual council members. Despite objection from the County Council, the circuit court ordered the county officials to appear for depositions. The County Council took an immediate appeal. Although this Court dismissed the appeal, it nevertheless considered when it might be proper for the circuit court to allow discovery for the purpose of

such time as it thinks proper. The Commission may modify its findings by reason of the additional evidence, and shall file with the court, within such time as the court directs, its report of action by reason of the additional evidence. If the Commission rescinds the action appealed from, the appeal shall be dismissed; and any modification made by the Commission shall stand in place of the original action. In the absence of rescission or modification by the Commission, judgment shall be rendered on the original order. No further evidence may be introduced in the reviewing court after referral to the Commission under this section, unless the court finds that serious injustice would otherwise result."

developing evidence outside of the administrative record. The Court stated (*id.* at 53, 200 A.2d 184):

"[I]f an appellant from ... action by the Council persuades the Circuit Court ... that there were, in fact, or in all likelihood, factors present, not of record, which influenced the action of the Council complained of, the court, in performing its statutory duty of determining whether the decision below was 'in accordance with the law,' has the power to inquire into the matters dehors the record and may do so, we think by utilizing the discovery processes."

The standard articulated in *Kaslow* recognizes that depositions of administrative officials cannot be ordered solely upon a bald allegation of "bad faith" or "improper procedure." Rather, according to the express language of this Court, the aggrieved party must *"persuade"* the reviewing court "that there were, *in fact, or in all likelihood,* factors present ... which *influenced* the action ...." (emphasis added). Certainly, this burden of showing "factors" to support a claim of impropriety requires something more than counsel's bare allegations.

The language from *Kaslow* would appear to be consistent with the United States Supreme Court's rulings relating to judicial review of agency action. Under the Supreme Court's holdings, ordinarily the individual administrative decision makers may be deposed only upon a strong *showing* of bad faith or improper behavior. *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971); *United States v. Morgan,* 313 U.S. 409, 61 S.Ct. 999, 85 L.Ed. 1429 (1941). *See Vil. of Arlington Hts. v. Metro. Housing Dev.,* 429 U.S. 252, 268 n. 18, 97 S.Ct. 555, 565 n. 18, 50 L.Ed.2d 450 (1977); *Camp v. Pitts,* 411 U.S. 138, 142–143, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973).

In *United States v. Morgan, supra,* 313 U.S. 409, 61 S.Ct. 999, 85 L.Ed. 1429, several market agencies charged the Secretary of Agriculture with bias in the fixing of rates for certain services rendered by the agencies. In connection

with the allegation, the trial judge permitted the market agencies to depose the Secretary with regard to his consultation with subordinate agency officials and his review of the administrative record. The Supreme Court ruled that the lower court had erred in authorizing the Secretary's deposition, stating (*id.* at 422, 61 S.Ct. at 1004):

> "[T]he Secretary should never have been subjected to this examination. The proceeding before the Secretary 'has a quality resembling that of a judicial proceeding.' ... Such an examination of a judge would be destructive of judicial responsibility .... Just as a judge cannot be subjected to such a scrutiny ... so the integrity of the administrative process must be equally respected."

Thus the *Morgan* court unequivocally established a fundamental principle of administrative law: that a party challenging agency action is ordinarily forbidden from inquiring into the mental processes of an administrative official. *See* 3 Davis, *Administrative Law Treatise*, §§ 17.4–17.7 (2d ed. 1980).

■ Thirty years later, in *Overton Park, supra,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136, the Supreme Court recognized a limited exception to the general rule set forth in *Morgan.* In *Overton Park,* private citizens and conservation organizations brought an action for judicial review of the Secretary of Transportation's decision to authorize the use of federal monies for the construction of an interstate highway through a public park. The Secretary's decision was made without any findings of fact and without a record showing the basis for the administrative decision. In connection with the lawsuit, the petitioners sought to take the deposition of a Department of Transportation official below the level of Secretary. The trial court denied the petitioner's request, and the Court of Appeals affirmed. *Citizens to Preserve Overton Park v. Volpe,* 432 F.2d 1307 (6th Cir.1970). The Supreme Court reversed, holding that where administrative findings were not made, a trial court "may require the administrative officials who participated in the

decision to give testimony explaining their action." 401 U.S. at 420, 91 S.Ct. at 825. The Court's decision to allow the deposition, however, was expressly limited to situations such as that before the Court, where administrative findings were not made and where the administrative record failed to disclose the basis for decision. Under usual circumstances, however, the Court stated that "there must be a strong *showing* of bad faith or improper behavior before such inquiry may be made." *Ibid.*, emphasis added.[6]

The general rule set forth in *Morgan* and *Overton Park* has consistently been applied by courts to deny a request to scrutinize an agency official with regard to how and why he reached a particular decision. *See, e.g., Sierra Club v. Costle,* 657 F.2d 298, 390 n. 450 (D.C.Cir.1981); *National Nutritional Foods Ass'n v. Mathews,* 557 F.2d 325, 331–333 (2d Cir.1977); *City of Des Plaines v. Metropolitan Sanitary Dist.,* 552 F.2d 736, 739–740 (7th Cir.1977); *First Bank & Trust Co. v. Smith,* 545 F.2d 752, 753 (1st Cir.1976), *cert. denied,* 430 U.S. 931, 97 S.Ct. 1551, 51 L.Ed.2d 775 (1977); *National Nutritional Foods Ass'n v. Food & Drug Admin.,* 491 F.2d 1141 (2d Cir.), *cert. denied,* 419 U.S. 874, 95 S.Ct. 135, 42 L.Ed.2d 113 (1974); *Bank of Commerce of Laredo v. City Nat. Bank of Laredo,* 484 F.2d 284, 288 (5th Cir.1973), *cert. denied,* 416 U.S. 905, 94 S.Ct. 1609, 40 L.Ed.2d 109 (1974); *Friends of the Shawangunks, Inc. v. Watt,* 97 F.R.D. 663, 666–668 (N.D.N.Y.1983); *Environmental Defense Fund, Inc. v. Blum,* 458 F.Supp. 650, 663 (D.D.C.1978); *State of California v. Superior Court, su-*

---

**6.** In a separate opinion in the *Overton Park* case, Justice Black, joined by Justice Brennan, agreed with the Court except for the Court's failure to order that the case be remanded to the Secretary of Transportation for a hearing and findings of fact. 401 U.S. at 421–422, 91 S.Ct. at 826–827. In our view, where an agency is required to make findings of fact showing the basis for its decision, and fails to do so adequately, the remedy advocated in Justice Black's opinion is generally preferable to court-ordered depositions of administrative officials. This is the remedial action which this Court has ordered in similar circumstances. *United Steelworkers v. Beth. Steel,* 298 Md. 665, 678–681, 472 A.2d 62 (1984), and cases there cited.

*pra,* 16 Cal.App.3d at 94–95, 93 Cal.Rptr. 663; *Frye v. Inhabitants of Town of Cumberland,* 464 A.2d 195, 200 (Me.1983); *New England Medical Ctr. v. Rate Setting Com'n,* 384 Mass. 46, 423 N.E.2d 786, 792 (1981). *See also Kelly v. Kansas City,* 231 Kan. 751, 648 P.2d 225, 230–231 (1982).

■ The reasoning underlying the above-cited cases is that judicial review is generally confined to an objective examination of the record before the court. Absent exceptional circumstances, which preclude effective review of an agency's action on the record, an administrative official cannot be compelled to give testimony explaining the agency's decision. Thus, only a strong preliminary *showing* of bad faith or improper behavior will allow a party challenging agency action to depose the individual decision makers.

In the present case, the circuit court judge took the position that the general rule set forth in the *Overton Park* case was not controlling, that Rule 400 and Art. 78, § 96, permitted the requested depositions without a preliminary showing of "bad faith" or "improper procedure," and that there need be nothing more than an allegation of bad faith. We disagree.

■ Rule 400c. provides that "any matter, not privileged, which is relevant to the subject matter involved in the pending action" is discoverable. It is well-settled that the rule shall be construed liberally and that the administration of discovery rules is within the sound discretion of the trial judge. *Kelch v. Mass Transit Adm.,* 287 Md. 223, 229–230, 411 A.2d 449 (1980); *Balto. Transit Co. v. Mezzanotti,* 227 Md. 8, 13–14, 174 A.2d 768 (1961). Nevertheless, the scope of permissible discovery is not without limits. As Rule 400 makes clear, matters which either are not relevant or are subject to a privilege are not discoverable.

■ As previously noted, judicial review of administrative decisions, including Commission decisions, is generally limited to whether there is substantial evidence on the record to support the agency's action. *Potomac Edison*

*Co. v. PSC,* 279 Md. 573, 582–583, 369 A.2d 1035 (1977); *Public Serv. Comm'n v. Balto. Gas & El.,* 273 Md. 357, 361–363, 329 A.2d 691 (1974). With very limited exceptions, a reviewing court may not engage in a de novo retrial of administrative decisions; it ordinarily does not render a new judicial decision grounded on the testimony or evidence introduced for the first time before the court. *See Dep't of Nat. Res. v. Linchester,* 274 Md. 211, 224–229, 334 A.2d 514 (1975). Therefore the post-administrative testimony of individual agency decision makers, and any additional post-administrative "evidence" which such testimony may lead to, does not furnish the proper basis for the reviewing court's decision. Thus, absent a strong showing of "bad faith" or "improper procedure," the post-administrative testimony and thoughts of agency officials should not be deemed "relevant" within the meaning of Rule 400c. As the United States District Court for the District of Columbia stated in *Environmental Defense Fund, Inc. v. Blum, supra,* 458 F.Supp. at 663:

> "Political influence ... is an easy charge to make; the mere making of that accusation though must not serve to allow those disappointed by regulatory activity to invoke all of the benefits of the rules of civil procedure for an extensive search into the agency's decisional processes."

We are also of the view that Art. 78, § 96, does not support the trial court's position. Section 96 permits a party to offer additional evidence upon judicial review of the Commission's decisions for the purpose of having the case remanded for the Commission's reconsideration. This Court has previously ruled, however, that such additional evidence is only to be considered by the trial court in exceptional circumstances. *Sports Daily v. Public Service Comm.,* 179 Md. 355, 363–365, 18 A.2d 210 (1941). Moreover, as with Maryland Rule 400, the test of relevancy must be met under § 96. *Balto. Gas Co. v. McQuaid,* 220 Md. 373, 378, 152 A.2d 825 (1959). For the reasons set forth above, there was an insufficient showing for the depositions to be deemed relevant.

Accordingly, we adopt the general rule set forth in *United States v. Morgan, supra,* the *Overton Park* case, and the other cases previously cited. Only where a party makes a strong showing to the court of bad faith or impropriety may the depositions of the individual administrative decision makers be taken. In this case such a showing was not made. Consequently, the circuit court abused its discretion in denying the protective order and ordering the depositions.

MOTION TO DISMISS DENIED. ORDER OF THE CIRCUIT COURT FOR HOWARD COUNTY REVERSED, AND CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. APPELLEES TO PAY COSTS.