964 A.2d 713

**MARYLAND–NATIONAL CAPITAL PARK AND PLANNING COMMISSION, et al.,**

**v.**

**Aris MARDIROSSIAN, et al.**

**No. 2078, Sept. Term, 2007.**

Court of Special Appeals of Maryland.

Feb. 5, 2009.

208

David B. Lieb (Debra Y. Daniel, Adian R. Gardner, General Counsel on the brief), Silver Spring, for appellant.

Paul M. Sandler (Matthew A.S. Esworthy, Shapiro, Sher, Guinot & Sandler on the brief, Baltimore), and (Frederic J. Einhorn on the brief of Rockville), for appellee.

Panel: SALMON, WOODWARD, GRAEFF, JJ.

Opinion by SALMON, J.

Aris Mardirossian and his development company, 12000 River Road Property, LLC., (collectively, Mardirossian) filed a lawsuit in the Circuit Court for Montgomery County against Wayne Goldstein. In the discovery phase of that lawsuit, Mardirossian issued subpoenas *duces tecum* to Royce Hansen, Allison Bryant, John Robinson, Wendy Purdue, and Meredith Wellington ("the Commissioners") requiring each of them to attend a deposition and produce certain documents. The persons subpoenaed were all either present or former members of the Maryland National Capital Park and Planning Commission and were then serving (or had served) on the Montgomery County Planning Board.

The Maryland National Capital Park and Planning Commission (MNCPPC), joined by the Commissioners, filed a motion for protective order asking that the circuit court not enforce the subpoenas. Mardirossian filed a written opposition to the motion and on September 26, 2007, a hearing was held in the Circuit Court for Montgomery County. The court denied the motion for protective order but in doing so directed counsel for Mardirossian to limit the scope of his deposition inquiries in certain respects. A timely appeal was filed by the

MNCPPC and the Commissioners.[1] The court stayed the depositions pending the outcome of any appeal.

The sole issue raised by the appellants in this appeal is: Did the Circuit Court err in failing to follow federal and out-of-state precedent that forbid (under most circumstances) the taking of the deposition of high-ranking government officials in lawsuits that are not specifically directed at the officials' conduct?

# I

In August 2006, Mardirossian began the process of obtaining approval for a forest conservation plan concerning property located at 12000 River Road. Mardirossian first filed a Natural Resources Inventory/Forest Stand Delineation for the property with the Commission's Environmental Planning staff. After that filing was approved, Mardirossian filed several proposed forest conservation plans that were reviewed by Mark Pfefferle, a member of the Environmental Planning staff.

In response to each of the proposed forest conservation plans submitted by Mardirossian, Mr. Pfefferle sent Mardirossian a written explanation as to why the plan would not be approved by the staff. When the last proposed forest conservation plan was rejected by Mr. Pfefferle, Mardirossian exercised his right to appeal the staff-level denial to the Planning Board ("the Board"). At the hearing before the Board, it was shown that the buildable portion of the 12000 River Road Property sits atop a bluff overlooking the Potomac River and the C & O Canal National Park. The rear of the property drops off steeply towards the National Park, and the property line sits only a few feet away from the C & O Canal. The Planning Board voted unanimously to deny the proposed

1. Because the Commission and the Commissioners who were served with subpoenas were not parties to the suit filed by Mardirossian, the order denying the protective order they requested was a final judgment insofar as they were concerned. *See St. Joseph Medical Center, Inc. v. Cardiac Surgery Associates, P.A.*, 392 Md. 75, 90, 896 A.2d 304 (2006).

forest conservation plan because, among other things, the plan proposed removal of more then fifty native species of trees, many of which were located on extremely steep slopes and within stream valley buffer areas where tree removal is generally not permitted.

Following the planning board's denial, Mardirossian made it clear that he planned to file a petition for judicial review of the Board's denial. But before such a petition could be filed, Mardirossian had to wait until the Board filed a written resolution denying the forest conservation plan.

## II

### The Goldstein Lawsuit

On August 8, 2006, which was about three months after Mardirossian began the process of seeking approval for the forest conservation plan, Wayne Goldstein ("Goldstein") wrote a letter to Mr. Mardirossian that read, in part:

It has come to my attention from a reliable source that you have apparently arranged for a tree company to come to the property at 12000 River Road in Potomac, owned by 12000 River Road Property, LLC, of which you are the manager and resident agent, to cut down sufficient trees to create a view of the Potomac River from the property. It is my understanding that such an action would clearly violate Chapter 22A of the Montgomery County Code and could subject you and the corporate entity that owns the property to a fine of up to $1000, up to six months in jail, and an administrative civil penalty of up to $9 per square foot, as well as a requirement to reforest the cleared area and perhaps place a conservation easement on most of the 3.25 acre property. In addition, if the clearing includes land under a scenic easement with the National Park Service (NPS) related to the C & O Canal National Historic Park, there could be additional federal penalties.

As president of Montgomery Preservation, Inc., my primary concern is the potential negative impact upon the Historic National Park. I'm including a clause from a scenic

easement agreement that details the century-long interest of the federal government in the Potomac River and adjacent lands.

Goldstein's letter, dated October 8, 2006, went on to discuss Montgomery County's Forest Conservation Law and Mardirossian's efforts to obtain planning commission approval of a forest conservation plan for his property. Goldstein's letter continued:

It is my understanding that you have met with representatives of both the NPS (National Park Staff) and the Maryland–National Capital Park and Planning Commission (M–NCPPC) to discuss your plans for this property. At this point, the M–NCPPC apparently had rejected your Natural Resource Inventory/Forest Stand Delineation (NRI/FSD) plan as inaccurate and incomplete because a number of specimen trees have not been included on the initially-submitted plan. This meeting underscores your great familiarity with the administrative processes and underlying statutes regarding environmental planning and all other planning in Montgomery County as well as the City of Gaithersburg, and that you would have to know that you can do no clearing of any trees on the property before the NRI/FSD plan and other plans have been approved.

*It is also my understanding that you want the tree company to do for you what was done for Dan Snyder, the owner of the neighboring properties at 11920 and 11930 River Road. It is because of Mr. Snyder's actions that Montgomery County raised the maximum available administrative civil penalty for such unlawful tree cutting from $1/foot to $9/foot.* In addition, Mr. Snyder had received improper permission from an NPS official to do the clearing an action that nonetheless allowed Mr. Snyder to negotiate a less severe financial settlement. However, even in that circumstance in addition to paying a fine and planting hundreds of trees he also had to place a perpetual easement on three acres of his property.

I hope that my source is mistaken in the information provided to me and if that turns out to be the case, I will

then offer my sincerest apology to you. However, if the information is correct, I urge you to stop this action immediately because the consequences to you if you went forward could otherwise be nothing less than disastrous. Please consider yourself to be fully informed in advance of all of those consequences by this letter.

(Emphasis supplied.)

It should be noted that Goldstein's letter was written, and Mardirossian's lawsuit was filed, about nine months before the Commission voted to deny the proposed forest conservation plan for 12000 River Road.

Goldstein's letter was disseminated to numerous third-parties. Within days after Goldstein's letter was sent, Mardirossian sued Goldstein in the Circuit Court for Montgomery County, asserting claims for private nuisance, false light invasion of privacy, and interference with prospective advantage. Mardirossian amended his complaint on February 6, 2007.

Mardirossian's amended complaint alleged that Mardirossian's "development of the 12000 River Road Property was derailed as a result of the wide circulation of Goldstein's letter and Goldstein's false, incendiary, and misleading communications (about Mardirossian's alleged plans for his property) with various Federal, State and local government agencies and their employees."

In mid-August 2007, about six week's after the Board's denial, Mardirossian served the subpoenas here at issue. Each of the Commissioners was required by the subpoenas to appear at a deposition and produce documents. The deposition was scheduled for September 17, 2007. The evident purpose of the deposition was to determine what, if any, verbal, written, or electronic contact each of the Commissioners had with Goldstein and other persons (allegedly) engaged with Goldstein in tortious conduct against Mardirossian.

At the time the subpoenas were issued, two of the Commissioners subpoenaed, Wendy Perdue and Meredith Wellington, were no longer serving on the Commission. In their motion to suppress, appellants did not cite any federal or out-of-state precedent to support their position. Movants relied exclusive-

ly on two Maryland cases, viz: *Montgomery County v. Stevens,* 337 Md. 471, 654 A.2d 877 (1995) and *Public Service Comm'n. of Maryland v. Patuxent Valley Conservation League,* 300 Md. 200, 477 A.2d 759 (1984). Those cases were cited for two legal principles viz: 1) Agency decision makers cannot be found to stand for deposition, except under extremely rare circumstances and 2) Depositions of agency decision makers may be permitted only where there has been a "strong showing" of fraud or extreme circumstances. As will be shown, appellants characterization of those legal principles are too broad, and by its breadth they misstate the law.

In their motion to quash, movants also said:

Because the Commission has already been subjected to substantial burdens to comply with two other subpoenas served by [Mardirossian] in this case, requiring the Commissioners to be deposed would result in annoyance, oppression, and undue burden and expense. In April 2007, [Mardirossian] subjected Mark Pfefferle, an employee in the Commission's Environmental Planning Section, to an all-day deposition. In deposing Mr. Pfefferle, the Plaintiffs have already had access to the Commission employee who has by far the most knowledge of facts that might be in any way related to this litigation. The Commission's Custodian of Records and Mr. Pfefferle also produced a substantial number of documents in response to the Plaintiffs' subpoenas. Subjecting the Commission to the substantial additional annoyance, oppression, burden, and expense of having five of its Commissioners deposed would be inappropriate in any case, but is particularly inappropriate in this case where the Plaintiffs have already had a full opportunity to depose the Commission employee who has by far and away the most knowledge of the subject matter of their case.

Mardirossian's written opposition pointed out, accurately, that the two Maryland cases relied upon by the Commissioners were inapposite because both dealt with attempts to depose high ranking officials in lawsuits that were commenced by the filing of a petition for judicial review of a decision of an administrative agency in which a party sought to take the

deposition of the administrative decision maker(s). In the case *sub judice*, Mardirossian had not filed an administrative appeal and, as far as is shown in the record, the depositions were not being taken so as to strengthen Mardirossian's position in the event that an administrative appeal was filed.

At the September 26, 2007, hearing concerning the Commissioners' motion for protective order, counsel for the Commissioners first argued that it is incorrect to say "that the bar [against] deposing agency decision makers and top agency officials, applies only in judicial review proceedings." To support that argument, counsel initially relied on three cases: *United States v. Morgan*, 313 U.S. 409, 61 S.Ct. 999, 85 L.Ed. 1429 (1941) *Public Service Comm'n of Maryland v. Patuxent Valley Conservation League*, *supra*, 300 Md. at 213–14, 477 A.2d 759; and *Montgomery County v. Stevens*, *supra*, 337 Md. at 481, 654 A.2d 877. Later in oral argument, counsel for the Commissioners also relied on *Church of Scientology of Boston v. I.R.S.*, 138 F.R.D. 9 (D.Mass.1990) and *Martin v. Valley National Bank of Arizona*, 140 F.R.D. 291 (1991). The *Church of Scientology* case was cited in support of the proposition that "a top government official may only be deposed upon a showing that the information to be gained from such a deposition is not available through any other source." Martin was cited to support appellant's contention that "the normal presumption in favor of allowing discovery does not apply. Rather, ... 'A party may only conduct such a deposition upon a showing that the deposition is necessary in order to obtain relevant information that would not significantly interfere with the ability of the official to carry out his governmental responsibilities.' "

In response, counsel for Mardirossian stressed that at deposition he was not seeking information that related to how the Commissioners arrived at their decision in any case, nor did counsel have any intent to make inquiry about matters involving "quasi-judicial decision-making" by the Commissioners. His counsel explicitly conceded that any such inquiry would be improper. Counsel then explained why the depositions were necessary:

Now in order to prove the damages [caused by Goldstein] we have elicited so far information that individuals would be writing to the Commission complaining about Mr. Mardirossian. We have information through documents that there were airplanes and rangers dispatched to ... [the] Mardirossian, [property] to surround his premises. That helicopters would hover over in the most unusual circumstances that exist in the history of a normal citizen's life in this community. The claim is that the cause of the damages was this particular improper communication [by Goldstein].

Now why do we want to question the Commissioners? We want to question the Commissioners because there are letters, e-mail letters from some of the individuals involved in planning the letter, the egregious letter, that to [Royce] Hanson [one of the appellants] that make certain complaints. And then there are copies of letters to Mr. Hanson from Federal agencies relating to follow-ups on what's happening with surveillance on the property.

We want to depose the Commissioners to ask them questions that related to communications between the Commissioners, Mr. [Mark] Elrich and Mr. Goldstein, and others. We want to ask questions about the involvement of the Commissioners, if any, knowledge or communications with the [park] rangers. We want to ask questions about what they knew of the helicopters. What involvement they had. And to verify certain facts that we have.

Now those questions would not be violative of any privilege or protection. However, what is of, I think, more than interest, of concern is the point raised by counsel whether there's a pending matter [possible petition for judicial review contemplated by Mardirossian concerning the Planning Commission Board's denial of his proposed Forest Conservation Plan]. *And there should not be questions relating to the pending matter. And I agree with* that.

(Emphasis added.)

### III

After the trial judge denied appellant's motion for protective order, and after the appeal in this case was filed, Mardirossian

submitted a new forest conservation plan to the Park and Planning Commission's Environmental Planning staff. The revised plan was approved by the staff and Mardirossian withdrew his previously submitted plans. As a consequence, Mardirossian never filed a petition for judicial review.

## IV

Trial judges are accorded broad discretion in deciding whether to grant or deny a motion for protective order. When such a motion is denied, we review that denial based on an abuse of discretion standard. *See Forensic Advisors, Inc. v. Matrixx Initiatives, Inc.,* 170 Md.App. 520, 530–31, 907 A.2d 855 (2006). Judicial discretion is defined "as the power of a court to determine a question upon fair judicial consideration with regard to what is right and equitable under the law and directed by reason and conscience to a just result." *Ehrlich v. Grove,* 396 Md. 550, 561, 914 A.2d 783 (2007) *(quoting Schneider v. Hawkins,* 179 Md. 21, 25, 16 A.2d 861 (1940)). A trial judge abuses his or her discretion "where no reasonable person would take the view adopted by the [trial] court." *See Fontaine v. State,* 134 Md.App. 275, 288, 759 A.2d 1136 (2000) *(citing Metheny v. State,* 359 Md. 576, 604, 755 A.2d 1088 (2000)).

The appellants, *(citing Patuxent Valley,* 300 Md. at 204, 477 A.2d 759), commence their attack on the trial judge's decision by stating that "the Court of Appeals has found that ordering a top agency decision maker to stand for deposition under circumstances similar to this case was an abuse of discretion." The *Patuxent Valley* case had its origin when Pepco, a public utility, asked the Maryland Public Service Commission for a Certificate of Public Convenience and Necessity that Pepco needed in order to construct a 500 kilovolt overhead transmission line between substations in Howard and Montgomery counties. *Id.* After taking testimony for almost one year from more then 100 lay witnesses and numerous expert witnesses, a hearing examiner recommended that Pepco be issued the requested certificate. The Public Service Commission agreed with the hearing examiner. *Id.* The Patuxent Valley Conser-

vation League, and others, then filed a petition for judicial review of the Commission's decision to issue the certificate. *Id.*

Prior to a hearing in the circuit court in regard to the petition for judicial review, Patuxent Valley filed a request for the issuance of a summons for the purpose of taking the depositions of the Public Service Commissioners who participated in the Pepco decision. The Public Service Commission filed a motion for protective order. *Id.* At the hearing it was alleged by Patuxent Valley that the Commissioners had used "improper procedure" in granting the certificate to Pepco, and that the administrative record was deficient. *Id.* at 204–5, 477 A.2d 759. Counsel for Patuxent Valley also argued that at some point during the administrative proceedings, an "informal" *ex parte* communication may have taken place between the hearing examiner and the chairman of the Public Service Commission. *Id.* at 205, 477 A.2d 759. Lastly, it was alleged that the hearing examiner "might have been predisposed" in favor of Pepco and that the case "may even bear down [sic] to some question of bad faith." *Id.* The motions judge concluded that the assertions by the petitioners amounted to allegations of "bad faith" and "improper procedure" and therefore denied the Public Service Commissions motion and ordered the Commissioners to appear for deposition. *Id.*

On appeal, the decision to deny the motion for protective order was reversed. 300 Md. at 218, 477 A.2d 759. In *Patuxent Valley,* the Court of Appeals began its opinion by acknowledging that it had "never expressly ruled whether a party challenging an administrative decision in court can depose the individual decision maker upon a mere allegation of 'bad faith' or 'improper procedure.'" *Id.* at 212, 477 A.2d 759. The Court noted, however, that in *Montgomery County Council v. Kaslow,* 235 Md. 45, 53, 200 A.2d 184 (1964), it had said, in *dicta,* that the aggrieved party must "persuade" the reviewing court "that there were, in fact, or in all likelihood, factors present ... which influence the action...." The *Patuxent Valley* Court construed its prior decision in *Kaslow* to mean that the aggrieved party carries the burden of showing the

"factors" necessary to support a claim of impropriety and something more than counsel's bare allegations are needed to meet that burden. *Id.* at 213, 200 A.2d 184. The *Patuxent Valley* Court then proceeded to analyze the Supreme Court decision in *U.S. v. Morgan,* 313 U.S. 409, 61 S.Ct. 999, 85 L.Ed. 1429 (1941), saying:

> The language from *Kaslow* would appear to be consistent with the United States Supreme Court's rulings relating to judicial review of agency action. Under the Supreme Court's holdings, ordinarily the individual administrative decision makers may be deposed only upon a strong *showing* of bad faith or improper behavior....

In *United States v. Morgan, supra,* 313 U.S. 409, 61 S.Ct. 999, 85 L.Ed. 1429, several market agencies charged the Secretary of Agriculture with bias in the fixing of rates for certain services rendered by the agencies. In connection with the allegation, the trial judge permitted the market agencies to depose the Secretary with regard to his consultation with subordinate agency officials and his review of the administrative record. The Supreme Court ruled that the lower court had erred in authorizing the Secretary's deposition, stating (*Id.* at 422, 61 S.Ct. at 1004):

> "[T]he Secretary should never have been subjected to this examination. The proceeding before the Secretary 'has a quality resembling that of a judicial proceeding' ... Such an examination of a judge would be destructive of judicial responsibility.... Just as a judge cannot be subjected to such a scrutiny ... so the integrity of the administrative process must be equally respected."

Thus the *Morgan* court unequivocally established a fundamental principle of administrative law: that a party challenging agency action is ordinarily *forbidden from inquiring into the mental processes of an administrative official. See* 3 Davis, *Administrative Law Treatise,* § § 17.4–17.7 (2d ed.1980).

Thirty years later, in *Overton Park, supra,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d at 136, the Supreme Court recognized a limited exception to the general rule set forth in

*Morgan.* In *Overton Park,* private citizens and conservation organizations brought an action for judicial review of the Secretary of Transportation's decision to authorize the use of federal monies for the construction of an interstate highway through a public park. The Secretary's decision was made without findings of fact and without a record showing the basis for the administrative decision. In connection with the lawsuit, the petitioners sought to take the deposition of a Department of Transportation official below the level of Secretary. The trial court denied the petitioner's request, and the Court of Appeals affirmed. *Citizens to Preserve Overton Park v. Volpe,* 432 F.2d 1307 (6th Cir. 1970). The Supreme Court reversed, holding that where administrative findings were not made, a trial court "may require the administrative officials who participated in the decision to give testimony explaining their action." 401 U.S. at 420, 91 S.Ct. at 825. The Court's decision to allow the deposition, however, was expressly limited to situations such as that before the court, where administrative findings were not made and where the administrative record failed to disclose the basis for decision. Under usual circumstances, however, the Court stated that "there must be a strong *showing* of bad faith or improper behavior before such inquiry may be made."

*Id.* at 213–15, 477 A.2d 759 (emphasis added).

Nothing in the *Patuxent Valley* case supports appellants' position that the fundamental principle of administrative law set forth in *Morgan* applies not only to "a party challenging agency action," *id.* at 214, 477 A.2d 759, but also to any litigant seeking to depose a high-ranking governmental official or former high ranking officials. This is important because here Mardirossian is not challenging any action by the Maryland National Capital Park and Planning Commission, nor is he challenging any action by any of the Commissioners.

The case of *Montgomery County v. Stevens,* as previously mentioned, was relied upon by the appellants when the motion for protective order was argued before the circuit court. Alan E. Stevens, a Montgomery county police officer, was charged

by his employer with conduct unbecoming an officer in violation of Department Rules. *Id.* at 474, 654 A.2d 877. Pursuant to the Law Enforcement Officers Bill of Rights [LEOBR], the charges were heard before a hearing board. The board sustained the charge of conduct unbecoming a police officer and recommended to the Chief of Police that a letter of reprimand be issued. *Id.* at 474–75, 654 A.2d 877. The Police Chief increased the recommended penalty to include a two day suspension without pay. *Id.* at 475, 654 A.2d 877. Officer Stevens then brought an action for judicial review in the Circuit Court for Montgomery County. *Id.* In that proceeding, Officer Stevens filed a motion for leave to initiate discovery, notice depositions, and amplify the record. Among other things, the officer asserted that the proper procedures were not followed by the Police Chief and that the Chief failed to specify his reasons for increasing the penalty. *Id.* at 476, 654 A.2d 877. The motion for leave to initiate discovery was granted and the depositions of the Chief and others were scheduled. Montgomery County filed an immediate appeal and the deposition of the Chief of Police was stayed pending the outcome of that appeal. *Id.* at 476, 654 A.2d 877. The *Stevens* Court reversed the order of the circuit court allowing the deposition of the police chief to go forward. In doing so, the Court said:

> We pointed out in *Public Service Comm'n v. Patuxent Valley, supra,* 300 Md. at 214, 477 A.2d 759, . . . that it is "a fundamental principle of administrative law . . . . that a party challenging agency action is ordinarily forbidden from inquiring into the mental processes of an administrative official." *See United States v. Morgan,* 313 U.S. 409, 422 61 S.Ct. 999, 1004–1005, 85 L.Ed. 1429, 1435 (1941) (holding that, in an action for judicial review of a decision by the Secretary of Agriculture, the trial court erred in permitting the plaintiffs to take the Secretary's deposition, because the "proceeding before the Secretary 'has a quality resembling that of a judicial proceeding' . . . Such an examination of a judge would be destructive of judicial responsibility. . . . Just as a judge cannot be subjected to such scrutiny . . . So

the integrity of the administrative process must be equally respected"). *Accord: Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 420, 91 S.Ct. 814, 825, 28 L.Ed.2d 136, 155–156 (1971); 3 Davis, *Administrative Law Treatises,* § 17.7 (2d ed.1980). *See also, Montrose Chemical Corporation of California v. Train,* 491 F.2d 63, 68–70 (D.C.Cir. 1974).

Departure from this fundamental principle is extremely rare. In *Public Service Comm'n v. Patuxent Valley, supra,* this Court mentioned one possible limited exception. We explained that if the party challenging the agency action could make a "strong showing"˙ of, as opposed to a mere allegation of, the existence of fraud or extreme circumstances which occurred outside the scope of the administrative record, a deposition of the administrative decision maker might be permissible. 300 Md. at 213–217, 477 A.2d at 766–767. *See County Council v. District Land,* 274 Md. 691, 706, 337 A.2d 712, 721 (1975) ("The short of it is that in the absence of the proof of fraud, ... the [deposition] evidence which the court allowed would be nowhere permitted by law"). Moreover, even under such circumstances, circuit court discovery should not be permitted when a remand to the administrative agency is a viable alternative. *Patuxent Valley,* 300 Md. at 215 n. 6, 477 A.2d at 767 n. 6.

*Id.* at 481–82, 654 A.2d 877.

Later, the *Stevens* Court added:

In sum, the trial court's orders permitting the depositions would be justified only if Officer Stevens had made a strong showing that there was an impropriety, external to the administrative record, which tainted the final agency decision. Furthermore, in order for the circuit court to be the proper forum in which to initially consider evidence in an action for judicial review of· an administrative decision, Officer Stevens must demonstrate why the matter cannot be adequately explored on remand to the agency. *Cf.* the Maryland Administrative Procedure Act, Code (1984, 1993 Repl.Vol., 1994 Cu. Supp.), § 10–222(f) of the State Government Article (providing that judicial review is confined to

the administrative record, and that, if the reviewing court determines that additional evidence is necessary, the proper course of action is to remand for the agency to take additional evidence and modify its findings accordingly). Officer Stevens failed to make these threshold showings. *Id.* at 484, 654 A.2d 877.

*Stevens* is not controlling in this case. That case related to an attempt to take a deposition in a petition for judicial review proceeding. Additionally, in *Stevens,* as in Patuxent Valley, the cases concerned litigants who sought to inquire into the mental processes of an agency decision-maker. *Stevens,* 337 Md. at 481, 654 A.2d 877. Here, appellees' attorney explicitly disavowed any intent to question the Commissioners' mental processes.

In its decision denying the motion for protective order in this case, the motions judge relied, in part, upon language used in *Montgomery County v. Schooley,* 97 Md.App. 107, 627 A.2d 69 (1993). In *Schooley,* the plaintiffs filed a four count complaint for declaratory and injunctive relief, in which they contended that an amendment to the councilmanic redistricting plan by the County Council for Montgomery County was invalidly adopted. *Id.* at 109, 627 A.2d 69. While the matter was pending in the circuit court, the plaintiffs noted the deposition of Councilman Isaiah Leggett, who served as President of the County Council when it considered the amendment to the bill changing the councilmanic districts. *Id.* at 110, 627 A.2d 69. The County filed a motion for a protective order alleging that "the deposition of a Council member regarding issues surrounding the enactment of legislation should not be permitted, as it would violate the legislative privilege afforded to Mr. Leggett as member of the County Council." *Id.* The County also alleged that the deposition was not "reasonably calculated to lead to the discovery of admissible evidence." *Id.* The circuit court denied the County's motion and directed that the depositions proceed. An immediate appeal was filed by the County and the depositions were postponed pending the appeal. *Id.* at 111, 627 A.2d 69.

On appeal, after a review of the pertinent authorities, Judge Alan Wilner, speaking for this Court, said that "a legislator, even if not a party to the action and thus not subject to any direct consequences of it," cannot be compelled to explain, other than before the legislative body of which he is a member, either his legislative conduct or "the events that occurred in a legislative session." *Id.* at 117, 627 A.2d 69. Later in the *Schooley* opinion, Judge Wilner said:

[I]n their arguments to the circuit court and to this court, [appellees] have narrowed considerably the scope of their otherwise unlimited notice of deposition, they have effectively renounced any intent to inquire in the matters and events occurring during regularly scheduled meetings of the Council and have focused their attention on the meeting of November 24, 1991. This was a private political meeting, they contend, and although in their brief they refer to it as a "legislative session," they aver that they are entitled to inquire as to "factors present, not of record, which influence the Council."

The *Schooley* Court concluded as follows:

It is evident from this that the legislative process, for purposes of the privilege, includes more than just proceedings at regularly scheduled meetings of a legislative body. If it includes a meeting with citizens or private interest groups, it must also include caucuses and meetings with political officials called to discuss pending or proposed legislation.

On the record, as we have it, we are hard-pressed to see what areas of inquiry *would* be permissible as falling outside the privilege. Because the issue was presented and resolved below as an all-or-nothing proposition, however-either quash the notice of deposition or allow the deposition to proceed without advance limitation-the court did not address whether there were specific areas of permissible inquiry. Such areas may exist, and appellees should be given an opportunity to define them. After considering the County's second argument-that of relevance-we shall remand the case for that purpose.

The second principal basis for the County's motion for protective order was that Leggett's deposition is not reasonably calculated to lead to the discovery of admissible evidence and is therefore not justified under Md. Rule 2–402(a). The thrust of this argument is that, if the deposition is for the purpose of inquiring into Councilman Leggett's motives or intent in dealing with the redistricting plan or Bill No. 56–91, such testimony would be inadmissible. The legislative intent of the Council cannot be established by the intent of its individual members. *Liquor Stores Assn. v. Commrs.*, 171 Md. 426, 430, 189 A. 209 (1937). Other facts evidencing legislative acts, the County repeats, can be discovered through transcripts or minutes of Council proceedings.

All of this is true, but appellees maintain that there are areas of inquiry that *could* lead to admissible evidence, even though we cannot ascertain from this record what they might be. To a large extent, the areas of permissible inquiry under Rule 2–402 may overlap those that may be permissible under the privilege. As we are remanding for a further proceeding in that regard, we shall permit appellees to establish, if they can, their entitlement to depose Mr. Leggett under the Rule.

*Id.* at 123–24, 627 A.2d 69 (emphasis in original).

*Schooley* is not directly on point for two independent reasons. First, the party seeking protection in *Schooley* asserted, as one of the grounds for a protective order, the argument that Mr. Leggett would be entitled to invoke legislative immunity concerning any question that might be asked at the deposition. In the Schooley case, the movant did not contend that there was a broad administrative rule barring depositions of high ranking county officials, like the one espoused by the appellants in this case. Second, no one in the case sub judice contended that the questions that might be asked of the deponents were irrelevant nor was any argument advanced that such testimony would be inadmissible.

Even though not directly apposite, the manner in which the *Schooley* Court resolved the issue (i.e., a remand to ascertain whether there might be areas of permissible inquiry) suggests that Maryland does not follow the very broad rule favored by appellants, i.e., excluding the depositions of all high ranking officials unless appellant can first prove two pre-conditions, viz: 1) that the information sought is necessary, and 2) that the information cannot be obtained from another source.

■ The rule espoused by appellants is referred to by them in their brief as the "Morgan Doctrine." According to appellants, the doctrine is called by that name because it has its origin in the Supreme Court case of *United States v. Morgan, supra.* But, as far as we can determine, no other courts refer to the rule appellants ask us to apply by that name and for good reason, viz: the rule set forth in *United States v. Morgan* only applies to a litigant who challenges an administrative agency's decision and who seeks to take a deposition of a high ranking officer of that same administrative agency. *See Patuxent Valley,* 300 Md. at 214, 477 A.2d 759.

As the circuit court recognized in the subject case, when the depositions of the Commissioners are taken it would be improper to ask questions concerning the mental processes that the Commissioners used in reaching their conclusion as to the earlier case Mardirossian had before it. *See Boehm v. Anne Arundel County, Maryland,* 54 Md.App. 497, 503, 459 A.2d 590 (1983). This was also recognized by Mardirossian's counsel, who explicitly assured the court that no such questions were contemplated.

In support of their position, appellants cite several federal cases and four cases from our sister states. Only two of those cases were mentioned in oral argument in the circuit court and none were mentioned when appellants filed their motion for a protective order.

The cases relied upon by appellants for the first time in this appeal are: *In re United States (Reno),* 197 F.3d 310, 313 (8th Cir.1999) ("high ranking government officials have greater duties and time constraints than other witnesses .... [and

therefore,] they should not, absent extraordinary circumstances, be called to testify regarding their reasons for taking official actions."); *In re United States*, 985 F.2d 510 (11th Cir.1993) (in order to protect officials from the constant distractions of testifying in lawsuits, courts have required that defendants show a special need or situation compelling such discovery); *Clarke v. State of Washington Attorney General's Office*, 133 Wash.App. 767, 138 P.3d 144 (2006) (following federal cases that protect high-ranking government officials from discovery when other available witnesses can provide the same information, the court held that the trial court did not err when it denied Clarke's motion to compel the deposition of Christine Gregoire, the governor of the State of Washington); *The Arnold Agency v. West Virginia Lottery Commission*, 206 W.Va. 583, 526 S.E.2d 814 (1999) (highly placed government officials are not subject to a deposition absent a showing that the testimony of the official is necessary to prevent injustice to the party that requested it), *State ex rel. Paige v. Canady*, 197 W.Va. 154, 475 S.E.2d 154 (1996) (a party may only depose a high-ranking government official upon a showing that it is necessary in order to obtain relevant information and that it would not significantly interfere with the ability of the officer to carry out his governmental responsibilities; nevertheless, depositions of senior officials should be allowed if they "possess [ ] particular information necessary to the development or maintenance of the party's case," which would not otherwise be reasonably obtainable).

Professors C. Wright and A. Miller say in their treatise, Federal Practice and Procedure § 2454, page 425:

> The burden to establish that a subpoena *duces tecum* is unreasonable or oppressive is on the person who seeks to have it quashed. He cannot rely on a mere assertion that compliance will be burdensome and arduous without showing the manner and extent of the burden and the injurious consequences of compliance.

*See also Goodman v. United States*, 369 F.2d 166, 169 (9th Cir.1966).

In this appeal, the appellants ask us, in effect, to rule that the motions judge abused his discretion by failing to apply a rule never adopted by the Maryland Court of Appeals. In conjunction with the rule they claim to be applicable, appellants assert that appellees had the burden of proving that 1) the information sought in the subpoena *duces tecum* and depositions involved in this case would be relevant and necessary, and 2) that such evidence is not otherwise obtainable from lower ranking officials.

Viewing the evidence in the light most favorable to the non-movants, the appellees did prove that the information sought was relevant and necessary.

On the other hand, arguably at least, the appellees did not show that the information sought was not otherwise available from some lower ranking person. In our view, if the Court of Appeals were presented with this issue, it would apply the rule set forth in Wright and Miller, Federal Practice and Procedure, *supra*, and hold that the burden of proving that the subpoena *duces tecum* is unreasonable or oppressive (because the same information is available from other sources) is on the party that seeks to quash the subpoena. To shift such a burden to the non-movant would in many cases be unfair, because, usually at least, the person or entity who seeks to quash the subpoena is in the best position to know what alternate sources are available. This case presents a good example. Appellees wanted to find out who contacted the Commissioners in regard to Goldstein's letter, what was said, and what involvement the Commissioners had, if any, in dispatching aircraft as a result of that letter. It is possible, of course, that some subaltern could answer such questions and produce the documents requested. But if such a person or persons exist, appellants' knowledge of the identity of the person(s) would be superior to that of the appellees. Therefore, this burden should be on the party that seeks to quash the subpoenas.

For the above reasons we hold that the Circuit Court for Montgomery County did not abuse its discretion when it denied appellants' motion for a protective order.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANTS.