*Mayor and City Council of Baltimore, et al. v. Nicole Lambert, et al.*, No. 0255, September Term 2024. Opinion by Ripken, J.

**DISCOVERY – PRIVILEGE – *MORGAN* DOCTRINE – SCOPE**
The *Morgan* doctrine is an exception to general discovery principles and provides that high-ranking government officials are not subject to being deposed with respect to their mental processes in performing discretionary acts. Where the party seeking a deposition sought to question prospective deponents about the decisions that led to the creation of governmental policies and procedures, the information sought concerned their mental processes in performing discretionary acts and was within the scope of the *Morgan* doctrine.

**DISCOVERY – PRIVILEGE – *MORGAN* DOCTRINE – APPLICABILITY**
The *Morgan* doctrine is applicable only to high-ranking government officials; not every governmental official may claim the privilege. The official seeking to assert the privilege bears the initial burden of showing that the doctrine is applicable. Whether the party seeking a protective order meets this burden should be assessed on a case-by-case basis. Maryland has recognized the privilege for those who sit at the pinnacle of their agencies. Where it was not clear that the circuit court made a finding concerning the applicability of the doctrine as to each prospective deponent, and in the absence of supporting information in the record, the issue was remanded to the circuit court.

**DISCOVERY – PRIVILEGE – *MORGAN* DOCTRINE – BURDEN OF ESTABLISHING EXCEPTIONS**
If the moving party meets their burden to establish that the *Morgan* doctrine protects the prospective deponents, the party seeking discovery then has the burden to show that one of two exceptions is applicable.

**DISCOVERY – PRIVILEGE – *MORGAN* DOCTRINE – RECOGNIZED EXCEPTIONS**
There are two recognized exceptions to the *Morgan* doctrine: if (1) extraordinary circumstances are shown or (2) the official is personally involved in a material way. It falls short of the standard to show that the high-ranking official merely had some degree of knowledge or involvement. Where the record was unclear whether the parties seeking discovery met their burden under the standard for demonstrating either available exception applied, the issue was remanded to the circuit court.

<u>REPORTED</u>

<u>IN THE APPELLATE COURT</u>

<u>OF MARYLAND</u>

No. 0255

September Term, 2024

_____

MAYOR AND CITY COUNCIL OF

BALTIMORE, *ET AL.*

v.

NICOLE LAMBERT, *ET AL.*

_____

Wells, C.J.,
Ripken,
Eyler, Deborah S.
    (Senior Judge, Specially Assigned),

JJ.
_____

Opinion by Ripken, J.
_____

Filed: May 5, 2025

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

The Appellants, nine current and former employees of the Baltimore City Department of Health ("Appellants" or "the prospective deponents"), appeal the denial of their motion for a protective order. Appellants sought the protective order as a shield to prevent the prospective deponents from being deposed by Appellees, Nicole Lambert and her daughter L.L.[1] The basis of Appellants' contention was that, under the *Morgan* doctrine, Appellants are high-level government officials not subject to deposition with regard to their mental processes. The circuit court denied Appellants' motion, and this timely interlocutory appeal followed.

## ISSUE PRESENTED FOR REVIEW

Appellants present the following issue for our review:[2]

Whether the circuit court erred or abused its discretion in denying the motion for a protective order.

Appellants contend that the circuit court found that an exception to the *Morgan* doctrine is applicable to all nine prospective deponents, and therefore by extension, it must have found that the *Morgan* doctrine applies to each of the Appellants. These contended

---

[1] L.L. was a minor at the time of the occurrence underlying this litigation. We refer to her by her initials to protect her privacy.

[2] Consolidated and rephrased from:
  1. Did the circuit court err in applying the exception to the *Morgan* doctrine where Appellees (i) failed to demonstrate that exceptional circumstances exist and (ii) failed to demonstrate that the public officials are intertwined with the issues in controversy?
  2. Did the circuit court abuse its discretion in denying the Motion for Protective Order where the depositions of the public officials will be unduly burdensome, duplicative, harassing, and prejudicial to the public officials, especially when Appellees can obtain the information sought less intrusively through a corporate designee?

findings are not explicit, and it is unclear from the sparse record that either party met its burden. We will therefore vacate the order and direct the circuit court to clarify its findings with respect to the applicability of the *Morgan* doctrine and the existence of an exception. We do conclude that the circuit court did not abuse its discretion in denying the motion for protective order on the other grounds advanced by Appellants.

### FACTUAL AND PROCEDURAL BACKGROUND

The underlying action arose out of events occurring in 2019, when L.L. was enrolled as a student in a Baltimore City public high school. The Baltimore City Health Department ("the Department") contracts with the Baltimore City Board of School Commissioners ("the Board") to provide School Based Health Center ("SBHC") services to Baltimore City public schools. The services provided by SBHCs include reproductive health care. In the operative complaint,[3] Appellees alleged that during the 2014–15 school year, the SBHCs began offering Nexplanon[4] as a contraceptive option. Appellees alleged that Nexplanon was not yet approved for use on children under the age of eighteen. Appellees alleged that the policy to provide Nexplanon in SBHCs was targeted at impoverished and minority children in Baltimore City public schools, particularly at young black women such as L.L.

---

[3] The operative pleading is Appellees' Third Amended Complaint. References to the factual allegations in the complaint, the defendants, and the counts brought against them are drawn from the operative complaint.

[4] According to assertions and inferences available from Appellees' operative complaint, Nexplanon is a third-generation, long-acting reversible contraceptive that is inserted into a patient's arm, and releases contraceptive over a period of time.

In 2019, L.L. received the Nexplanon implant, administered by a nurse at her school. L.L. alleged that she was repeatedly pressured by school personnel to receive the implant. Subsequently, L.L. alleged that she experienced complications due to improper insertion of the implant and had it surgically removed. Appellees alleged that L.L. was not informed that Nexplanon was not approved for her age group; not informed that Nexplanon was not recommended for her body mass index; and that L.L.'s mother, Nicole Lambert, was not informed of the implant and did not consent to the implant.

In 2022, Appellees brought suit against nineteen defendants, including the Board, the Mayor and City Council of Baltimore, the estate of the nurse who administered Nexplanon to L.L., and the nine prospective deponents. The prospective deponents, all of whom are current or former employees of the Department, include:[5]

- Oxiris Barbot, M.D., who served as the Baltimore City Health Commissioner from approximately August of 2010 to April of 2014.

- Leana Wen, M.D., who served as the Baltimore City Health Commissioner from approximately January of 2015 to October of 2018.

- Letitia Dzirasa, M.D., who served as the Baltimore City Health Commissioner from approximately March of 2019 to April of 2023.[6]

- Joy Twesigye, who served as the Clinical Director for SBHCs from approximately September of 2017 to October of 2018; Acting Assistant Commissioner of the Bureau of School Health from approximately October of

---

[5] Unless otherwise specified, dates and titles in this list are as stated in the prospective deponents' answers to interrogatories, which were attached as exhibits to Appellants' motion for protective order.

[6] Dr. Dzirasa's end date of April of 2023 comes from Appellants' brief.

3

2018 to February of 2019; and Director of Health Programs, Planning, and Evaluation in the Bureau of School Health from approximately January of 2019 to September of 2022.

- Shelly Choo, M.D., who served as the Senior Medical Advisor from approximately December of 2017 to March of 2019 and as the Chief Medical Officer from approximately April of 2019 to July of 2020.

- Francine J. Childs, who has served as the Assistant Commissioner of the Bureau of School Health from approximately June of 2002 through the present.[7]

- Sherry Adeyemi, who served as the Director of Health Program Planning and Evaluation for the Bureau of School Health from approximately July of 2011 to July of 2018.

- Ihouma Emenuga, M.D., who served as the Medical Director for School Health from approximately August of 2016 to December of 2018.

- Michal Thornton, who served as a Community Health Nurse Supervisor II in the Health Suite Services from approximately July of 2016 to April of 2019.

The operative complaint initially included twenty counts. Following the circuit court's dismissal of several counts, the sole remaining count as to the nine prospective deponents involved a claim of negligence. Appellees alleged that the nine prospective deponents breached a duty of care owed to L.L. in enacting a policy targeting her for a Nexplanon implant and that they are responsible for the actions of the nurse as an employee or agent of the Department. Appellees acknowledged that none of the prospective deponents personally delivered healthcare to L.L.

---

[7] "Present" as used here indicates the time Appellants' brief was filed on August 12, 2024.

4

In November of 2023, Appellees sought to schedule depositions for each of the nine prospective deponents. In an email exchange between counsel, Appellants objected to the depositions and offered to designate a representative to be deposed in the alternative. Appellees proceeded to serve notices of deposition on each of the nine prospective deponents. Appellants again informed Appellees of their objection to the depositions and filed a motion for a protective order. In the motion, Appellants contended that each of the nine prospective deponents were protected under the *Morgan* doctrine. Appellants requested that the circuit court enter an order that Appellees not be permitted to depose any of the nine prospective deponents.

Appellees opposed the motion, arguing that Maryland has not adopted an expansive reading of the *Morgan* doctrine such that it would apply to each of the Appellants. Appellees argued that even if the *Morgan* doctrine applied, the nine prospective deponents were so intertwined with the issues in controversy that an exception would be applicable. The circuit court ruled on the motion without a hearing and denied the motion for a protective order as to each of the nine prospective deponents. In the order, the court noted that "the [Appellees] have shown that the [Appellants] who they wish to depose have information and have taken certain and various actions that are intertwined with the issues in controversy." Appellants noted this timely appeal.

**DISCUSSION**

Trial courts "administer the discovery rules, and are vested with a reasonable, sound discretion in applying them[.]" *Johnson v. Clark*, 199 Md. App. 305, 323 (2011). We therefore review the circuit court's decision to deny the motion for protective order for an

5

abuse of discretion. *Tanis v. Crocker*, 110 Md. App. 559, 573 (1996) (citing *Price v. Orrison*, 261 Md. 8, 10 (1971)). A circuit court's discretion is "tempered by the requirement that the court correctly apply the law applicable to the case." *Bass v. State*, 206 Md. App. 1, 11 (2012) (internal citation and quotation marks omitted). When the circuit court's decision involves an interpretation of the law, we review the court's conclusions under a de novo standard of review.[8] *Credible Behav. Health, Inc. v. Johnson*, 466 Md. 380, 388 (2019).

## A. Party Contentions

Appellants contend that each of the nine prospective deponents are protected under the *Morgan* doctrine. Appellants argue that Appellees did not meet their burden to show that an exception to the doctrine is applicable. Appellants contend that Appellees did not put forward specific allegations which would demonstrate personal involvement of any of the nine prospective deponents, and that because the information sought can be obtained through alternative means, exceptional circumstances to avoid application of the *Morgan* doctrine do not exist. Appellants also contend that the depositions are not permitted under Maryland Rule 2-402(a) because the depositions would be irrelevant, duplicative, unduly burdensome, and the information sought can be obtained through less intrusive means.

---

[8] We note that although "discovery orders challenged on the basis of privilege are not immediately appealable final orders[,]" the appeal of a denial of a motion for a protective order regarding the applicability of the *Morgan* doctrine is one of the few "rare and fact-specific" exceptions appealable under the collateral order doctrine. *Harris v. State*, 420 Md. 300, 325 n.25 (2011) (citing *Johnson v. Clark*, 199 Md. App. 305 (2011)).

Appellees contend that the *Morgan* doctrine is construed narrowly in Maryland and should not apply outside an administrative context. Appellees also argue that Appellants did not meet their burden to demonstrate that they are high-ranking government officials subject to protection under the doctrine. Appellees contend that even if the *Morgan* doctrine applies to Appellants, Appellees met their burden to show that an exception is applicable by demonstrating that Appellants had personal involvement in the policy decisions which led to L.L. being implanted with Nexplanon. Appellees additionally contend that exceptional circumstances exist. Finally, Appellees argue that Appellants did not meet their burden under Maryland Rule 2-403 of showing that good cause exists to warrant a protective order.

## B. Legal Framework

### i. *Protective Orders*

Under Maryland Rule 2-403(a), "[o]n motion of a party . . . and for good cause shown, the court may enter any order that justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" Protective orders should be utilized in limited circumstances. *Tanis*, 110 Md. App. at 575. A trial court's power to enter a protective order "is not a blanket authorization for the court to prohibit disclosure of information whenever it deems it advisable to do so," but rather is intended to "prevent injury, harassment, or abuse of the court's processes." *Forensic Advisors, Inc. v. Matrixx Initiatives, Inc.*, 170 Md. App. 520, 531 (2006) (quoting *Tanis*, 110 Md. App. at 575). "A protective order may be issued based on an affidavit, and there is no requirement for a hearing." *Mullaney v. Aude*, 126 Md. App. 639, 660 (1999).

7

The Maryland rules of discovery are intended to be broad and comprehensive, allowing discovery regarding any non-privileged matter relevant to the subject matter involved in the action. *Falik v. Hornage*, 413 Md. 163, 182 (2010) (citing Md. Rule 2-402). The broad scope of the discovery rules has the objective of "eliminat[ing], as far as possible, the necessity of any party going to trial while confused about the facts that gave rise to the litigation." *Billman v. State of Md. Deposit Ins. Fund Corp.*, 86 Md. App. 1, 12–13 (1991). Thus, a protective order, even when deemed necessary by the trial court, should not be overbroad. *Forensic Advisors, Inc.*, 170 Md. App. at 531–32 (holding that the appellants were "not entitled to quash a subpoena on the ground that the subpoena call[ed] for the production of a few documents that [were] entitled to protection.").

The party seeking a protective order "has the burden of making a particular and specific demonstration of fact, as distinguished from general, conclusory statements, revealing some injustice, prejudice, or consequential harm that will result if protection is denied." *Tanis*, 110 Md. App. at 574 (internal citation omitted). A party seeking to shield privileged material has the burden of proving by a preponderance of the evidence that the privilege is applicable. *E.I. du Pont de Nemours & Co. v. Forma-Pack, Inc.*, 351 Md. 396, 409–10 (1998) (evaluating a party's assertion of the work product privilege).

ii.     *The Morgan Doctrine*

The *Morgan* doctrine is federally created, arising out of *United States v. Morgan*, 313 U.S. 409 (1941). In *Morgan*, the Supreme Court of the United States noted its concern that the deposition of the Secretary of Agriculture had compromised "the integrity of the administrative process[.]" *Id.* at 422. Since *Morgan*, "courts have relied on *Morgan* to hold

8

that a high-ranking government official should not—absent exceptional circumstances—be deposed or called to testify regarding the reasons for taking official action[.]" *Lederman v. N.Y.C. Dep't of Parks & Recreation*, 731 F.3d 199, 203 (2d Cir. 2013) (citing to precedent from eight federal circuit courts of appeal). We have held that the doctrine, which is an exception to general discovery principles, provides that "high-ranking government officials are not subject to being deposed with respect to their mental processes in performing discretionary acts." *Johnson*, 199 Md. App. at 323 (citing *In re Office of Inspector Gen., R.R. Ret. Bd.*, 933 F.2d 276, 278 (5th Cir. 1991) and *Singer Sewing Mach. Co. v. NLRB*, 329 F.2d 200, 206–08 (4th Cir. 1964)). The privilege applies to both current and former officials. *Id.* The doctrine is sometimes known as the "mental process" privilege or "apex doctrine." *See Singer Sewing*, 329 F.2d at 206; *Florida v. United States*, 625 F. Supp. 3d 1242, 1245–46 (N.D. Fla. 2022).

The *Morgan* doctrine was initially adopted in Maryland in a limited administrative context. *See Md.-Nat'l Cap. Park & Plan. Comm'n v. Mardirossian*, 184 Md. App. 207, 214–15 (2009) (discussing adoption of the *Morgan* doctrine in Maryland). In *Public Service Commission v. Patuxent Valley Conservation League*, the Supreme Court of Maryland adopted the rule from *Morgan* and its progeny and held that the Commissioners of the Public Service Commission could not be subject to deposition for the purpose of inquiring into their decision to allow the construction of a transmission line. 300 Md. 200, 203, 218 (1984). Later, in *Montgomery County v. Stevens*, the Supreme Court applied the *Morgan* doctrine to hold that the Montgomery County Chief of Police could not be deposed for the purpose of inquiring into his decision to suspend a police officer following a

disciplinary hearing. 337 Md. 471, 484–85 (1995). Thus, the initial cases applying the doctrine in Maryland "both dealt with attempts to depose high[-]ranking officials in lawsuits that were commenced by the filing of a petition for judicial review of a decision of an administrative agency[.]" *Mardirossian*, 184 Md. App. at 214.

In *Mardirossian*, this Court declined to expand application of the *Morgan* doctrine to a context other than judicial review of agency action. *Id.* at 220–23. *Mardirossian* dealt with the denial of a motion for protective order sought by the Commissioners of the Maryland National Capital Park and Planning Commission. *Id.* at 209–10. The underlying action was not an administrative appeal, but a civil suit asserting claims for private nuisance, false light invasion of privacy, and interference with prospective advantage. *Id.* at 213. This Court held that *Patuxent Valley* and *Stevens* did not apply, both because Maryland had not extended the doctrine beyond administrative appeals to "any litigant seeking to depose a high-ranking government official or former high[-]ranking officials[,]" and because the appellees had "explicitly disavowed any intent to question the Commissioners' mental processes." *Id.* at 220, 223. Thus, we adopted the limiting rule that the *Morgan* doctrine "only applies to a litigant who challenges an administrative agency's decision and who seeks to take a deposition of a high[-]ranking officer of that same administrative agency." *Id.* at 226.

Two years later, we decided *Johnson v. Clark*, which arose from a denial of a motion for protective order that sought to prevent the deposition of the former Prince George's County Executive. 199 Md. App. at 308–09. The underlying action arose out of a shooting by an off-duty police officer and was "based on negligent entrustment of a gun" to that

10

officer. *Id.* at 309–10, 328. The plaintiffs sought to depose the former County Executive, who had appointed the officer to the Prince George's County Department of Homeland Security, to inquire into the officer's work history and what, if anything, the County did to address his psychological issues. *Id.* at 310, 321. We determined that the County Executive was protected under the *Morgan* doctrine. *Id.* at 329. We held that deposing the County Executive for the purposes sought by the plaintiffs would implicate his mental processes:

> Appellant's knowledge of matters such as [the officer's] work and mental health history are relevant only if used to challenge appellant's action or inaction. To the extent discovery is sought as to why appellant took or did not take action to 'address the known violent and psychological issues' of [the officer], that information is privileged, as that necessarily involves asking why appellant took certain action or did not take certain action based on whatever knowledge he had, which is information protected by the mental process privilege. If appellant's deposition is limited to knowledge, and he testifies to having knowledge, he would be forced to explain his action or inaction, thus violating his mental process privilege.

*Id.* at 330. *Johnson* thus expanded our application beyond the limited context of administrative appeals.

The doctrine, however, does not create an absolute bar to discovery. *Id.* at 323. The official seeking to assert the privilege bears the initial burden of showing that the doctrine is applicable. *Florida*, 625 F. Supp. 3d at 1246; *accord Mardirossian*, 184 Md. App. at 228 (holding that the burden to quash a subpoena was on the moving party). Once such a showing is made, the party seeking to depose the official has the burden to demonstrate the existence of an applicable exception. *Johnson*, 199 Md. App. at 323. There are two recognized exceptions to the *Morgan* doctrine: "if (1) extraordinary circumstances are

11

shown . . . or (2) the official is personally involved in a material way." *Id.* (citing *United States v. Merhige*, 487 F.2d 25, 29 (4th Cir. 1973) and *Singer Sewing*, 329 F.2d at 206–08). To show personal involvement, "knowledge or awareness of information that *may* be helpful if discovered is insufficient[.]" *Id.* at 324 (emphasis added). To show extraordinary circumstances, the party seeking the deposition must show:

> (1) that the official's testimony is necessary to obtain relevant information that is not available from another source; (2) the official has first-hand information that could not be reasonably obtained from other sources; (3) the testimony is essential to that party's case; (4) the deposition would not significantly interfere with the ability of the official to perform his [or her] government duties; and (5) that the evidence sought is not available through any alternative source or less burdensome means.

*Id.* (quoting *Buono v. City of Newark*, 249 F.R.D. 469, 470 (2008)). If the party seeking the deposition is able to prove either of the two recognized exceptions, the privilege is overcome, and the deposition should be permitted. *Id.* at 323.

### a. *High-Ranking Government Officials*

The *Morgan* doctrine applies only to "high-ranking" government officials; not every official may claim the privilege. *See Johnson*, 199 Md. App. at 323; *Byrd v. District of Columbia*, 259 F.R.D. 1, 6–7 (D.D.C. 2009) (beginning analysis of the applicability of the *Morgan* doctrine with an inquiry into whether "the individual is high-ranking"). Maryland has no standard for determining whether an official is sufficiently high-ranking to qualify for protection under *Morgan*. Neither is there a uniform federal standard; rather, "the decision is made on a case-by-case basis." *Florida*, 625 F. Supp. 3d at 1246; *see also Byrd*, 259 F.R.D. at 6–7.

12

There are, however, patterns to be gleaned from prior application of the doctrine. "[Federal] courts have held that the Mayor of the District of Columbia, United States Senators, the General Counsel to United States House of Representatives, the Attorney General of the United States and certain high administrative heads are high-ranking officials for this purpose." *Byrd*, 529 F.R.D. at 6–7 (citations omitted). Additionally, "[federal] district courts have applied the *Morgan* doctrine to establish that a chief of police, a former police commissioner, and a state police superintendent constitute high-ranking government officials." *Holt v. Pennsylvania*, Nos. 1:18-CV-01272, 1:18-CV-02448, 2020 WL 435752, at *3 (M.D. Pa. Jan. 28, 2020). One federal district court observed that it "seems generally accepted that 'heads of government agencies' are covered by the apex doctrine[,]" and that "[i]n those instances where the apex doctrine has been applied to individuals who are not at the very top of the organizational chart, the individuals have usually been closely connected to the agency head."[9] *Florida*, 625 F. Supp. 3d at 1246, 1248 (citing to federal cases which applied the privilege to: the Chairman of the Federal Reserve Board; the former Secretary of Education; the Administrator of the Small Business Administration; the former House Majority Leader; and the Chair of the Consumer Product Safety Commission). It also appears to be the practice in at least some federal jurisdictions to apply the privilege to officials with a particularly close relationship to the agency head. *See, e.g.*, *United States v. Sensient Colors, Inc.*, 649 F. Supp. 2d 309,

---

[9] Federal courts in the Fourth Circuit likewise adhere to this pattern; for instance, the privilege has been applied to the Director of the Office of Thrift Savings and to the EPA Administrator. *See Franklin Sav. Ass'n v. Ryan*, 922 F.2d 209, 209, 212 (4th Cir. 1991); *In re McCarthy*, 636 F. App'x 142, 142, 144 (4th Cir. 2015).

321 (D.N.J. 2009) (applying the *Morgan* doctrine to an EPA Regional Administrator because she reported directly to the EPA Administrator).

In Maryland, we have applied the privilege to the Commissioners of the Public Service Commission; the Montgomery County Chief of Police; and the former County Executive for Prince George's County. *Patuxent Valley*, 300 Md. at 203, 218; *Stevens*, 337 Md. at 474, 486; *Johnson*, 199 Md. App. at 309, 330. Each of these positions functions as an agency head or chief executive—the Commissioners sit atop the Commission, the County Chief of Police is the head of the police department, and the Prince George's County Executive is the "directing head of the general administration" for the county. *Cnty. Exec. of Prince George's Cnty. v. Doe*, 291 Md. 676, 682–83 (1981). Maryland's application of the *Morgan* doctrine has thus been consistent with the pattern in federal courts of recognizing the privilege for those who sit at the pinnacle of their agencies.[10] Whether Appellants met their burden should thus be assessed on a case-by-case basis, adhering to our past practice.[11]

---

[10] In *Mardirossian*, we held that the Commissioners of the Maryland National Capital Park and Planning Commission did not meet their burden in asserting the privilege because at the time we did not consider the *Morgan* doctrine applicable to the context; we did not hold that the Commissioners were ineligible for the privilege. *See* 184 Md. App. at 226.

[11] *Florida v. United States* notes that the majority of courts "have applied the doctrine narrowly, while a few have applied it more broadly." 625 F. Supp. 3d at 1246–47. Maryland courts have not had occasion to decide whether the *Morgan* doctrine applies to government officials other than agency heads, and for reasons to follow, we need not decide so now.

14

### C. Analysis

> i.    *The circuit court's application of the Morgan doctrine to the prospective deponents requires clarification.*

First, we note that the Appellees seek information which would be protected if the circuit court determines that the *Morgan* doctrine applies. Appellees assert that the information sought falls outside the scope of the *Morgan* doctrine because they seek information regarding "the implementation and day-to-day mechanics" of SBHC operations.[12] This assertion is not persuasive. Appellees have stated an interest in the roles of each of the nine prospective deponents in "creating, supervising, and/or implementing the Nexplanon implant plan in Baltimore City Public Schools[.]" Through emails with Appellants' counsel, Appellees indicated that they sought information concerning "the implementation of the Nexplanon plan, the running of the Nexplanon plan, and/or the procedures associated with the Nexplanon plan." In both the operative complaint and the opposition to the motion for protective order, Appellees noted that a central point of

---

[12] Appellees also argue for the application of the limited adoption of *Morgan* found in *Mardirossian*. Appellees assert that *Johnson v. Clark* "fails to account for the exact circumstances in which the *Morgan* doctrine was originally created—administrative law." (emphasis omitted). *Johnson* is the more recent case, and its procedural posture is analogous to the case before us; we therefore apply the law as stated in *Johnson*, which does not contain the limitations Appellees urge us to adopt. Appellees further assert that the *Morgan* doctrine does not apply to named defendants. To support this assertion, Appellees do not cite to any case law establishing such a rule, but rather argue that Maryland cases have not yet applied the doctrine to a named defendant. We find persuasive Appellants' argument that "[n]aming a high-ranking official as a party does not negate the *Morgan* doctrine's protections against deposition, and thereby give the opposing party *carte blanche* to conduct discovery against that official." Adopting such a limitation would undercut the protection provided by the doctrine.

concern in this case is that the Appellants "declined to follow a comprehensive public health approach to handling sexual activity among teenagers" and instead implemented a policy to make Nexplanon available in SBHCs. Additionally, in their opposition, Appellees asserted that they should be permitted to inquire into

> why the Nexplanon implant plan was created . . . , why it was created in the way it was . . . , why it targeted the individuals it did . . . , why it failed to address glaring issues in the plan . . . , why it failed to ensure participants provided informed consent . . . , and why/how the [nine prospective deponents] conspired with other Defendants to create the Nexplanon implant plan[.]

Appellees have thus made it clear that they seek to question the prospective deponents not only about the policies and procedures currently in place regarding the availability of Nexplanon in SBHCs, but also about the decisions that led to the creation of those policies and procedures and the reasons for choosing the policies over alternatives. In *Johnson*, we held that such an inquiry "necessarily involves asking why [the deponent] took certain action or did not take certain action based on whatever knowledge [he or she] had, which is information protected by the mental process privilege." 199 Md. App. at 330. Inquiring of the prospective deponents their role in developing the policy to offer Nexplanon and the procedures for its implementation would involve questions regarding their reasoning for taking certain actions over others. Thus, the information sought through

deposing Appellants concerns their "mental processes in performing discretionary acts" and is within the scope of the *Morgan* doctrine.[13] *See id.* at 323.

   a. *It is not clear whether Appellants met their burden to demonstrate that the Morgan doctrine applies to each prospective deponent.*

In their motion for protective order, Appellants had the burden to demonstrate "injustice, prejudice, or consequential harm[.]" *Tanis*, 110 Md. App. at 574 (internal citation omitted). Because they asserted privilege under the *Morgan* doctrine, Appellants were required to show that each of the nine prospective deponents is a current or former high-ranking government official and, thus, that the doctrine is applicable to each. *See Florida*, 625 F. Supp. 3d at 1246. In their motion, Appellants argued that "[n]one of the public officials were mere employees of the Health Department[;] there only exists one of each position, and each position can be occupied by only one person at a given time." Appellants stated that "three of the officials . . . headed the Health Department as Health Commissioner."[14] Appellants emphasized that each of the other six Department officials

---

[13] It is worth noting that the *Morgan* doctrine bears some similarities to the deliberative process, or executive, privilege. *See Johnson*, 199 Md. App. at 324–26. The deliberative process privilege protects "confidential advisory and deliberative communications between officials and those who assist them in formulating and deciding upon future governmental action." *Hamilton v. Verdow*, 287 Md. 544, 558 (1980). The privilege is assessed using a balancing test which weighs the need for confidentiality against a litigant's need for disclosure and the fair administration of justice. *See Md. Bd. of Physicians v. Geier*, 451 Md. 526, 568 (2017). As the parties have not yet raised deliberative process privilege in the present case, we will not assess whether the information sought by Appellees may fall under the privilege.

[14] At oral argument, Appellants asserted that Ihouma Emenuga has been appointed Commissioner subsequent to the start of this litigation. We will not consider that contention as it is not part of the record.

17

held nonduplicative positions. Here, Appellees assert that Appellants have not "demonstrated any layer between themselves" and the nurse who administered Nexplanon to L.L.

Appellants correctly note that the Commissioner of Health is the head of the Baltimore City Department of Health. The position of Commissioner is created by the City of Baltimore Charter. The Charter provides that "[t]here is a Department of Health, the head of which shall be the Commissioner of Health[,]" and that "[t]he Commissioner of Health shall supervise and direct the Department." Charter of Balt. City (1994 Revision), Art. VII, §§ 54–55. Appellants did not provide further information as to the roles and responsibilities of the remaining six prospective deponents, or as to their positions within the hierarchy of the Department. At oral argument, counsel for Appellants asserted that the circuit court's order contains an implied finding that the *Morgan* doctrine applies to all nine prospective deponents. It is not clear that such a finding was made, and in the absence of supporting information in the record, we decline to read one into the circuit court's order. Appellants' burden was to demonstrate that each official, individually, qualifies for protection under the *Morgan* doctrine. Their entitlement to a protective order, if it exists, is no broader than the scope of the doctrinal privilege. *See Forensic Advisors, Inc.*, 170 Md. App. at 531–32 (holding that the movants were not entitled to quash a subpoena in its entirety where only a few of the documents sought were privileged). We therefore will direct the circuit court on remand to clarify its finding with respect to the applicability of the doctrine to each prospective deponent.

18

*b. It is not clear whether Appellees met their burden to establish either exception to the Morgan doctrine.*

If Appellants met their burden to establish that the *Morgan* doctrine protects the prospective deponents, then the Appellees had the burden to show that one of two exceptions applied. *See Johnson*, 199 Md. App. at 323. Appellees assert, both in the opposition to the motion for protective order and before this Court, that both the personal involvement and the extraordinary circumstances exceptions are applicable. The arguments Appellees advance for both exceptions are general to all nine prospective deponents and do not address the exceptions as they might apply to the prospective deponents individually.

In the opposition, Appellees asserted that there were "three potential sources of information" regarding the Nexplanon policy: the now-deceased nurse who administered care to L.L.; the nine prospective deponents; and a government representative whom Appellants have offered to provide. Appellees argued that the estate of the nurse would not have the necessary information, and that a government representative's information would be secondhand; thus, Appellees contended, extraordinary circumstances existed to depose each of the nine prospective deponents. Appellees also assert that the nine prospective deponents "are unquestionably the individuals who worked to create the Nexplanon implant plan[,]" and thus have personal knowledge relevant to their claims. As to personal involvement, Appellees represented to opposing counsel that the prospective deponents' personal involvement was "based on the positions that [Appellants] held at the relevant periods of time[.]" Appellees also asserted that each of the nine prospective deponents

"have knowledge about the relationship between the City Schools and the Health Centers placed inside said schools" and about "the use of the Health Centers at school as it relates to birth control."

In the order denying the motion for protective order, the circuit court stated that "the [Appellees] have shown that the [Appellants] who[m] they wish to depose have information and have taken certain and various actions that are intertwined with the issues in controversy." Appellees assert that this amounts to a finding of the personal involvement exception. It is not clear whether the circuit court's statement is equivalent to such a finding. On remand, should the circuit court find that the *Morgan* doctrine is applicable, the circuit court should then determine as to each deponent to which it finds the doctrine is applicable, the existence, if any, of an applicable exception. We will clarify the standards for both exceptions for guidance purposes.

In *Johnson*, we stated that the *Morgan* doctrine may be overcome "in situations where a high-ranking official's involvement becomes less supervisory and directory and more hands-on and personal, that it is considered so intertwined with the issues in controversy, fundamental fairness may require the deposition[.]" *Johnson*, 199 Md. App. at 323. As to the personal involvement exception, we stated that "knowledge or awareness of information that may be helpful if discovered is insufficient to make the requisite showing." *Id.* at 324. We explained that "[t]he extent of personal involvement envisioned by the cases is substantial, specifically, that the involvement is 'so intertwined with the issues in controversy' as to warrant disclosure." *Id.* at 329. It falls short of the standard, then, to show that the high-ranking officials merely had some degree of knowledge or

20

involvement. Appellees must show that each of the prospective deponents, if found to be high-ranking government officials, individually had a "substantial," "hands-on and personal" involvement such that "fundamental fairness" requires their depositions. *Id.* at 323, 329; *see also Bogan v. City of Boston*, 489 F.3d 417, 423–24 (1st Cir. 2007) (holding that a note addressed to the Mayor's office regarding a need for a property inspection and allegations that the office had received complaints regarding the property, did not support an inference that the Mayor had personal involvement in ordering the inspection).

To demonstrate extraordinary circumstances, Appellees have the high burden to show five conjunctive elements. *See Johnson*, 199 Md. App. at 324. The first, second, and fifth elements specify that the information sought must be unique to the prospective deponent: "(1) that the official's testimony is necessary to obtain relevant information that is not available from another source; (2) [that] the official has first-hand information that could not be reasonably obtained from other sources; . . . and (5) that the evidence sought is not available through any alternative source or less burdensome means." *Id.*; *see also In re United States*, 197 F.3d 310, 314 (8th Cir. 1999) (holding that, in order to depose the Attorney General and Deputy Attorney General, the plaintiff had to establish "both that the discovery sought is relevant and necessary and that it cannot otherwise be obtained."). Therefore, Appellees are required to demonstrate that the prospective deponents possess unique information which cannot be obtained from any alternative sources available to

Appellees.[15] *See, e.g.*, *Bogan*, 489 F.3d at 424 (holding that the plaintiffs did not meet their burden to overcome the *Morgan* doctrine with respect to the Mayor of Boston because they had not yet exhausted other avenues of discovery, namely, the Mayor's aides).

It is the province of the circuit court, and not of this Court, to make a factual determination as to whether the parties have met their respective burdens. *See Hartford Fire Ins. Co. v. Est. of Sanders*, 232 Md. App. 24, 39 (2017) ("Appellate courts do not make factual findings or substitute the factual findings they would rather the trial court have made for the non-clearly erroneous factual findings that were made."). We will therefore remand the issue to the circuit court to clarify whether it finds that the *Morgan* doctrine is applicable to each of the prospective deponents and, if so, whether Appellees met their burden under the standard for either available exception to overcome the privilege as to each of the prospective deponents.

> ii.     *The circuit court did not abuse its discretion in denying the motion for a protective order on other grounds advanced by Appellants.*

We review the court's decision to deny a motion for a protective order for an abuse of discretion. *Price*, 261 Md. at 10. Setting aside the applicability of the *Morgan* doctrine, Appellants had the burden to show that "some injustice, prejudice, or consequential harm" would result from the depositions. *See Tanis*, 110 Md. App. at 574 (internal citation omitted). Appellants advanced several arguments in their motion to that effect.

---

[15] Because Appellants have offered to designate a government representative, to show that extraordinary circumstances exist, Appellees must also demonstrate that the unique information possessed by each prospective deponent cannot be obtained from the designee.

Appellants argued before the circuit court that the depositions would not lead to the discovery of relevant, admissible evidence. Under Maryland Rule 2-402(a), a party may obtain discovery if the information sought "is relevant to the subject matter involved in the action" and "reasonably calculated to lead to the discovery of admissible evidence." "The word 'relevance' has a different meaning in the discovery context from its meaning in the trial context." *Cole v. State*, 378 Md. 42, 61 (2003). Appellees disclosed to Appellants that they sought discovery concerning the prospective deponents' knowledge of, and possible participation in, the decision to make Nexplanon available in SBHCs, which led to L.L. receiving a Nexplanon implant. This information is central to the subject matter of Appellees' claims against Appellants.[16] A central objective of discovery is to "require disclosure of facts by a party litigant to all of his adversaries," and so it is to be expected that a party to the action would be asked to provide discovery pertaining to the plaintiffs' claims. *Kelch v. Mass Transit Admin.*, 287 Md. 223, 229 (1980) (internal citation and quotation marks omitted). Further, contrary to Appellants' contention, Appellees are not required to show that information discovered from the prospective deponents would be admissible at trial, where a higher threshold is applied to determine whether discoverable information may be admissible evidence. *See Falik*, 413 Md. at 190 n.11.

---

[16] Appellants argue that Ihouma Emenuga and Michal Thornton were not employed by the Department at the time L.L. received the Nexplanon implant and thus would not have relevant information. Appellants also made this argument before the circuit court, and there included Sherry Adeyemi. This argument misconstrues Appellees' negligence claim as relating solely to the alleged harm L.L. suffered; Appellees more broadly claim that the underlying policy was itself negligent.

Appellants next argued that the depositions would be unduly burdensome, harassing, and duplicative. Appellants assert that the depositions would be harassing and unduly burdensome because Appellees have accused a public official of engaging in a discriminatory "experiment" without a factual basis. Appellants assert that "[t]he concern against harassment is particularly acute with public officials whose decisions have wide-ranging effects." Appellants' argument misunderstands the standard for allowing discovery. We will not disturb the circuit court's discretion on this basis. As to Appellants' argument that the depositions would be duplicative, Rule 2-402(b)(1) states that circuit courts should limit discovery if it is "*unreasonably* cumulative or duplicative[.]" (emphasis added). As we have noted, all nine prospective deponents are named defendants in this action; each, by virtue of holding different positions in the Department at different times, may well have different information concerning the challenged policies and their development. We do not find that the circuit court abused its discretion in declining to find the depositions of all nine unreasonable.

Appellants also argued that Appellees could obtain the information they sought in the depositions through less intrusive means. "It is not ground for objection that the information sought is . . . otherwise obtainable by the party seeking discovery"; however, the court shall limit discovery if the information sought is "obtainable from some other source that is more convenient, less burdensome, or less expensive[.]" Md. Rule 2-402(a), (b)(1). Appellants offered to designate a government representative to be deposed as an alternative to the depositions of the officials. However, Appellants have not advanced an argument that the inconvenience, burden, or expense of depositions scheduled to last

approximately three hours each is so great as to necessitate a substitute. We also will not disturb the circuit court's exercise of discretion on this ground.

Because the record is insufficient for our review as to the applicability of the *Morgan* doctrine and the existence of an exception, we vacate the order and remand pursuant to Maryland Rule 8-604(d)(1) for the circuit court to clarify its findings. The circuit court has the discretion to order a hearing or further briefing on this matter but is not required to do so.

**ORDER OF THE CIRCUIT COURT FOR BALTIMORE CITY VACATED. CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLANTS.**